OVERTON, J.
 

 On December 22, 1924, plaintiff was following the occupation of a carpenter. On that date, he was in the employ of Spence & Goldstein, Inc., assisting In the construction of a building, and met with an accident while in the discharge of his duties. This, suit grows out of that accident. Plaintiff alleges that, while engaged as above stated, he stuck a splinter in the palm of his right hand in handling a piece of timber. He alleges that the injury, which he thereby-received, produced a paralysis in his right hand and in the thumb and fingers thereof, and affected his right shoulder, causing loss of the use of the right arm and hand. He also alleges that, as a result of the injury received, the strength in his hand, arm, and fingers is so impaired and diminished as to disqualify him from doing or performing the kind of work which he was accustomed to do and to limit his ability to such an extent that he can perform “only casual and seldom occurring labor,” and is now permanently partially disabled, and cannot, at present, earn and will not be able to earn a weekly wage in excess of $10. He further alleges that his employer was insured at the time of the accident by the Standard Accident Insurance Company, under a policy by which the insurer agreed to pay plaintiff any and all sums for which his employer might be held liable. He prays for judgment against his employer and the Standard Insurance Company, in solido, for compensation for a period of 300 weeks at the rate of $20 a week, less 17 weeks’ compensation paid, with legal interest on each payment from the date of its maturity. Both of the defendants appeared and answered plaintiff’s suit.
 

 The evidence disclosed by the record shows that plaintiff in picking up a piece of timber, in the discharge of the duties which he owed his employer, stuck a splinter in the palm of his right hand. The splinter entered at an angle and ranged towards the middle finger. Infection set in and this necessitated a minor operation in order to grant relief. As a result of the injury, plaintiff is unable to bend or move the middle finger of his right hand. That finger is perfectly stiff. He is able to move the remaining fingers of his. right hand only slightly. The thumb does not seem to be affected save, perhaps, slightly from nonuse. One of the physicians who took the stand, and his evidence is substantially in accord with that of the remaining physicians who testified concerning the matter, said that he found evidence of periostitis (an inflammation of the covering of the bones) of the phalanges of the middle finger. He also said that he found bone atrophy in all the fingers and especially marked in the phalanges of the middle finger. He also found arthritis in the intermediate joints of all of the fingers except the thumb. He is of. the opinion that the hand (exclusive of tlie fingers) and also the arm, except as a result of nonuse, are not involved. As a result of the injury plaintiff is unable to close his-hand, and hence is unable to "hold in it
 
 *1111
 
 a tool of any description or anything at all. There is evidence to the effect that if plaintiff’s middle finger were amputated it would improve his condition materially, but the evidence, as a whole, leaves it uncertain whether it would have that effect Plaintiff is uneducated. As stated, he is a carpenter. The only other work he knows anything about is farming. His injury incapacitates him for either.
 

 The Court of Appeal found that the evidence establishes the injury alleged by plaintiff, with the exception of the injury to his arm and shoulder. The court also found, which is in accord with the finding of the trial judge, that plaintiff is partially disabled to do work of a reasonable character, and fixed the compensation, under subsection (c) of section 8 of Employer’s Liability Act, as amended by Act 216 of 1924, the act under which the accident occurred, at $20 a week for the'period of disability, not to exceed 300 weeks, and rendered judgment for plaintiff accordingly, subject to credits by way of payments made to him of $20 a week for 20 weeks. The subsection, which we shall hereafter refer to as subsection (c), under which the Court of Appeal fixed the compensation due plaintiff, reads as follows:
 

 “For injury producing partial disability to do work of any reasonable character (the employee shall receive) sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond three hundred weeks.”
 

 Defendants are not satisfied with the judgment rendered against them, and, upon application made to us, were granted a writ of review. They assign the following errors as existing in that judgment, to wit:
 

 “(1) The court erred in holding that the case falls under paragraph (c) of section 8 of the compensation act, and in granting compensation of 65 per centum difference between the earning capacity of the plaintiff after the accident and ■his salary prior thereto, with a maximum of $20 per week, for a period not exceeding 300 weeks.
 

 “(2) In view of the finding of the court that the injury to the fingers of the hands had produced a permanent partial disability, the court erred in not applying paragraph (d), section 8 of the act (216 of 1924), providing for the loss of the use of a member being equivalent to amputation thereof, in which event recovery should have been for the loss of the four fingers for 90 weeks, and in no event in excess of 150 weeks provided for in case of a hand.
 

 “(3) In the alternative,- the court erred in not applying paragraph (e), section 8 of the act, as governing the compensation, and in failing to grant compensation under said paragraph in proportion to the amount which would have been granted under the act, had all the fingers of the hand been amputated.”
 

 In considering these assignments we shall consider the third assignment first, and then the remaining two.
 

 The third assignment, which is the one we shall consider first, is based on subsection (e) of section 8 of the Employer’s Liability Act, as amended by Act 216 of 1924. The subsection reads as follows:
 

 “In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a member or any physical function is seriously permanently impaired, the court may allow such compensation as is reasonable in proportion to the compensation hereinabove specifically provided in cases of specific disabilty above named, not to exceed sixty-five per centum of wages during one hundred weeks.”
 

 With reference to subsection (e), this court, in Black v. Louisiana Central Lumber Co. (No. 27743) ante, p. 889, 109 So. 538, not yet officially reported, said:
 

 “Of course, when a man’s hand is seriously permanently deformed and weakened, as in this case, the case is one ‘where the usefulness of a member is seriously [and] permanently impaired.’ But subsection (e), in terms, declares that it is not applicable to a case ‘where the usefulness of a member or any physical function is seriously permanently impaired,’ except ‘in cases not falling within any of the provisions already made;’ that is, in cases not falling within subsections (a), (b), (c), or (d).
 

 
 *1113
 
 “We have decided, at least five times, with the utmost deliberation, and with careful consideration of the several amendments of section 8 of the statute, that subsection (e) does not apply to a case falling within the provisions of subsection (a), subsection (b), subsection (c), or subsection (d). See Mack v. Legeai, 144 La. 1017, 81 So. 694; Norwood v. Lake Bisteneau Oil Co., 145 La. 823, 83 So. 25; Garr v. Wyatt Lumber Co., 147 La. 689, 85 So. 640; Dennis v. Huber, 151 La. 589, 92 So. 126; and Danniels [Daniels] v. Shreveport Producing & Refining Corporation, 151 La. 800, 92 So. 341.”
 

 These observations were made in connection with a case arising under Act 43 of 1922, but are equally applicable to a case arising under the Act of 1924.
 

 The foregoing excerpt quoted from the Black Case disposes of the third assignment of error, provided the injury suffered by plaintiff is of such a nature as to call for the fixing of compensation for it under any of the provisions preceding subsection (e), as, for instance, under subsections (a), (b), (c), or (d) of the statute.
 

 That plaintiff’s case falls within subsection (c) seems to be clear. His fingers, with the exception of his thumb, are so crippled that he is unable to close his hand or to grip anything. His injury has unfitted him for the only two occupations he knows anything about,' that of carpentering and that of farming. At the time of trial his earning capacity had been reduced, as a result of the injury, from $44 a week to $10 a week. He therefore may be said to be partially incapacitated, as a result of the injury, to do work of any reasonable character, and hence his case is governed by subsection (c) of the statute.
 

 Defendants contend, however, in their second assignment of error that the compensation should be fixed under subsection (d) of seetiqn 8 of the act, which provides, among other things, that “the permanent total loss of the use of a member shall be equivalent to the amputation of a (the) member,” and hence, that the-compensation should be only for the loss of the four fingers, which1 would be for 90 weeks, and in no event in excess of 150 weeks for the loss of a hand.
 

 This assignment requires an inquiry into the extent of the injury in order to ascertain whether the injury is to the fingers alone, or to the fingers and the rest of the hand. The Court of Appeal found, as we have stated, that plaintiff established “the injury as alleged,” with the exception of the injury to the arm and shoulder, which implies that not only the fingers are injured, but also the rest of the hand. The evidence, however, is clearly to the effect that the fingers only are injured1. We doubt that the court meant that the finding made by it should have the sweeping effect -that it implies. Be that, however, as it may, we are clearly of the opinion that the evidence shows -that the fingers alone are injured.
 

 The assignment also requires a further statement of the law applicable to it. Subdivision (d) of section S of the statute provides, among other things, that:
 

 “The loss of more than one phalanx of a thumb, or more than two phalanges of any finger or toe, shall be considered as the loss of-the entire member: Provided, however, that
 
 in no case
 
 shall the amount received for more than one finger,
 
 exceed
 
 the amount provided in this schedule for the loss of a hand.” .(Italics ours.)
 

 Following this provision there is another provision, not pertinent here, and then follows the'one quoted above to the effect that “the permanent total loss of the use of a member shall be equivalent to the amputa; tion of a (the) member.”
 

 The prohibition, quoted above, prohibiting the granting of more for the loss of more than one finger than is provided for- the Toss of a hand has reference to the loss of the fingers by amputation, or, which the statute deems the same, the permanent total loss of the use of the fingers. It cannot be said,. with the exception probably of the middle finger, that plaintiff . has suffered. the1 permanent, total
 
 *1115
 
 loss of the- use of his fingers. He still has a limited use of them, and, by having the middle finger amputated and the remaining fingers treated, there is a chance that their service to him will be appreciably increased. We cannot therefore fix his compensation under this provision. However, we think it reasonable to hold on the theory that the greater includes the lesser that the Legislature contemplated that, even when the injury is not equivalent to the loss of the fingers, the compensation should not exceed the loss provided for the loss of a hand, and hence to hold that this provision so amends subsection (c) that, where the injury is to the fingers, in no case shall the compensation exceed the loss of a hand. By so holding, we may place the injury under the schedule to which it properly belongs and, at the same time, enforce the prohibition In subsection (d), and thereby, we think, carry out fully the legislative intent. The effect of this ruling will be to allow plaintiff compensation at $20 a week during the period of disability, for 150 weeks, instead of for 300 weeks, subject, of course, to the credits allowed by the Court of Appeal.
 

 For the reasons assigned, it is ordered that the judgment under review be amended by reducing the number of weeks for which compensation is allowed, from a period during the disability, not exceeding 300 weeks, to a period during said disability, not exceeding 150 weeks, and, as thus amended, that it be affirmed in all respects, including the allowance of said credits, plaintiff to pay the costs of the appeal' and of this writ.
 

 ST. PAUL, J., dissents.