No. 2896

Second Circuit

CATER v. MAGNOLIA PIPE LINE CO.

(June 28, 1927. Opinion and Decree.)
(July 25, 1927. Rehearing Refused.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Master and Servant Par. 159.**

Under the Workmen's Compensation Act, where the injury which the employee received was to the great toe, but where the testimony shows that the injury to the toe has extended to and involved the use of the foot so as to produce disability to perform labor of a reasonable character, plaintiff will be awarded compensation based upon the loss of the use of a foot and not upon the loss of the use of a toe.
(The recent amendment of Act 20 of 1914 is Act 85 of 1926.—Editor's note.)

Appeal from the First Judicial District Court, Parish of Caddo. Hon. J. H. Stephens, Judge.

Action by John C. Cater against Magnolia Pipe Line Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Long & McSween, of Shreveport, attorneys for plaintiff, appellee.

Pugh, Boatner & Grimmet, of Shreveport, attorneys for defendant, appellant.

ODOM, J. Plaintiff was employed as a common laborer by the Magnolia Pipe

Line Company at $4.00 per day, working at times six and at times seven days per week. While assisting in the unloading of a generator weighing 800 pounds from a wagon it fell on his right foot, breaking the bones in the great toe.

He brings this suit under the Workmen's Compensation Act, alleging that by said accident he has been totally disabled to do work of a reasonable character, and prays for judgment granting him compensation at $15.60 per week for the period of his disability, not exceeding 400 weeks.

The lower court found that the injury had produced partial disability to labor and fixed his compensation under paragraph (c) of Subsection 1 of Section 8, Act No. 216 of 1924, at $9.10 per week for not to exceed 125 weeks, this being 65% of the difference between what he was earning at the time he was injured, and what he was found to be able to earn thereafter; the period of 125 weeks being fixed because under paragraph (d) of Subsection 1 of Section 8 of the act he could not draw compensation for a longer period if he had suffered a total loss of the use of the foot.

Defendant appealed. Plaintiff moved to amend the judgment so as to allow compensation as prayed for.

There is no dispute as to the plaintiff's injury, except as to the extent thereof. While at work plaintiff had the bones of the great toe on the right foot broken and crushed. The net results of the injury were described by two physicians, Doctor M. L. Adair, a radiologist, who made an x-ray of the foot about the time of the trial in October, 1926, some eight months after the injury, and Doctor E. L. Sanderson, who examined plaintiff's foot about the same time.

Doctor Adair said the radiograph showed an old fracture of the proximal phalanx of the great toe with no evidence of union.

"The distal end of the fracture of the proximal phalanx being upward and backward towards the proximal end of the phalanx."

He was asked about a small bone which could be felt between the great toe and the one next to it, and he said:

"It don't show any bone in between there but under the distal end there is two sesomoid bones there and that point that you speak of I cannot make out any bone there except the normal end— the little distal end from the contact with the other—and you feel it under the surface of the big toe, under the proximal phalanx."

He said that the x-ray showed no other fracture.

Doctor Sanderson testified:

"The great toe appears drawn up, and behind this great toe there appears to be a bone formation that is very tender to the touch. I judge it to be a fragment of the broken phalanx."

He testified that plaintiff cannot put on an ordinary shoe "with that curl there, or crook".

In answer to questions propounded to him by the court, Doctor Sanderson said:

"No, it is not stiff. There seems to be a false joint underneath the toe. The large toe, that has segments or joints, or two phalanx and the others have three, and the great toe is like the thumb and has two. And that has the original joint and

then there seems to be a false joint where it was broken so the proximal phalanx of the great toe is what we would call a false joint there, non-union of the fracture. The toe is not stiff. The tendency of the joint is to cause the fragment to be upward and backward rearing the toe up, and the tendon pulling it back."

He further said that he found no injury except to the great toe.

Under the above testimony defendant contends that plaintiff should be awarded compensation for twenty weeks only, for the statute provides that for the loss of a great toe the employee shall receive compensation at 65% of his wages for twenty weeks.

If the testimony as a whole showed that plaintiff had suffered no injury except the loss of a great toe, counsel's petition would be well taken; but there is other testimony which must be considered in connection and along with the above.

The testimony shows that the injury to the toe has extended to and affected the use of the foot, so that on the date of the trial, some eight months after the date of the injury, he was disabled and incapacitated to do the work he formerly did, by reason of the fact that the injury had extended to and affected the foot.

Plaintiff testified that he was treated by physicians over a period of about two months, when he was discharged. He then tried to do the same kind of work but found that he could not stand long at a time; that he could not walk without severe pain, and could not carry a load; that standing gave him constant pain. He tried for three weeks to do the same kind of work and had to quit, and finally got employment at a filling station at $40.00 per month, and was doing that in order to pay off a debt.

Here is what the physicians say:

Doctor Adair, in addition to his testimony, as quoted above, was asked:

"Q. If a man had a great toe amputated, would that relieve his condition, do you think—would that be your testimony? "A. I think he would have a more workable foot with that loose fragment off of the end there. I don't know, of course, that it would stop all the trouble, but I would think that he would have a more workable foot with the amputation of that loose fragment of bone there."

And he further said:

"I would think that any work that involved the work of the foot it would be painful as it is now."

Doctor Sanderson said:

"I think he would have pain with the use of the foot as it is now. * * * I don't know that the weight would affect it as much as the movement in walking. The movement of the great toe is really the part that is used in walking."

He further said the condition is permanent.

While the injury which plaintiff received was to the great toe, yet the testimony makes it perfectly clear that the injury has involved the use of the foot to such an extent that plaintiff is at least partially disabled to do work of a reasonable character, such work as he was capacitated to do and was doing prior to the accident.

This case, in our opinion, falls squarely within the holding of the Supreme Court

in the case of James vs. Spence & Goldstein, Inc., 161 La. 1108, 109 South. 917.

In that case the plaintiff's injury was to the fingers of the right hand, and it was urged by counsel for the defendant that he should be paid compensation based upon the loss of the fingers. The court found that as a result of the injury the plaintiff was unable to bend or move the middle finger and able to move the other fingers but slightly. The thumb was not involved—the hand and arm were not involved, except as a result of non-use.

The court said:

"As a result of the injury plaintiff is unable to close his hand, and, hence, is unable to hold in it a tool of any description or anything at all. * * * Be that however as it may, we are clearly of the opinion that the evidence shows that the fingers alone are injured."

But because the injury involved the use of the hand, the court declined to fix compensation as for the total loss of the fingers.

The court said, page 1113:

"That plaintiff's case falls within Subsection (c) seems to be clear. His fingers, with the exception of his thumb, are so crippled that he is unable to close his hand or to grip anything. His injury has unfitted him for the only two occupations he knows anything about, that of carpentering and that of farming."

Under these conditions the court fixed the plaintiff's compensation at 65% of the difference between what he was earning and what he was able thereafter to earn, but limited the period of recovery to one hundred and fifty weeks, because that is the maximum period allowed under the statute for the total loss of the use of a hand.

In the case at bar, plaintiff's injury was to the great toe, but that injury has so involved the foot as to disable him, but only partially. His case falls within paragraph (c), Subsection 1 of Section 8, of the statute.

But under the holding in James vs. Spence & Goldstein, Inc., supra, the period over which he may receive compensation must be limited to one hundred and twenty-five weeks, as that is the maximum period over which he could receive compensation for the total loss of the use of a foot.

The lower court found that he was earning at the time he was injured $24.00 per week and that he was subsequently able to earn $40.00 per month, or $10.00 per week, and it fixed his compensation at 65% of the difference, or $9.10 per week, for one hundred and twenty-five weeks, and allowed for $42.00 for expenses incurred and gave credit for the amounts already paid him.

That judgment is correct, and is therefore affirmed, with costs.