No. 3254

Second Circuit

___

STOKES v. E. SONDHEIMER CO.

___

(May 22, 1928. Opinion and Decree.)
(June 28, 1928. Rehearing Refused.)

___

(*Syllabus by the Editor*)

1. **Louisiana Digest—Master and Servant —Par. 154, 159.**

Paragraph 14, clause (d) subsection 1 section 8, paragraph 8, clause (d) subsection 1 of section 8, and paragraph 15, clause (d) subsection 1 of section 8 of Act 85 of 1926, amending Act 20 of 1914 the Workmen's Compensation Act have no application in cases where there is an injury to both a leg and an arm, the combination of both injuries being such as to produce total disability to do work of any kind, compensation for which is provided by clause (b) of subsection 1 of section 8 of Act 85 of 1926.

2. **Louisiana Digest—Master and Servant —Par. 154, 159.**

The total allowance under paragraphs 5 and 7 of clause (d) subsection 1 of section 8 of Act 85 of 1926 is 275 weeks compensation for loss of a hand and a foot. This is not in conflict with clause (b) of subsection 1 of section 8 of the same act where the loss of these two members produces total disability. In such cases recovery of compensation is had for total disability under the latter section.

3. **Louisiana Digest—Master and Servant —Par. 160(d), 160(i).**

Where the plaintiff in a workmen's compensation case under Act 20 of 1914 never refused treatment, had never

been offered any, and had been left to charity for a long period of time, the defendant can not plead lack of medical attention to injured employee as a defense.

4.  **Louisiana Digest—Master and Servant —Par. 160(k).**
In accordance with Act 19 of 1884, ten dollars for medical examination of injured employee and fifteen dollars for testifying in court is a reasonable fee for physician.

Appeal from the Sixth Judicial District Court, Parish of East Carroll. Hon. F. X. Ransdell, Judge.

Action by Columbus Stokes against E. Sondheimer Co.

There was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

A. J. Wyly, of Lake Providence, attorney for plaintiff, appellee.

Theus, Grisham & Davis, of Monroe, attorneys for defendant, appellant.

ODOM, J.  Plaintiff brings this suit to recover compensation under Act No. 85 of 1926.

He alleges that while cutting logs in the woods for defendant, a tree fell on him, breaking one of his legs and one of his arms, and as a result of said injuries he is totally and permanently disabled from doing any work of a reasonable character, and asks for full compensation for 400 weeks under clause (b) of subsection 1 of section 8 of the act.

Defendant, in answer, admits that while plaintiff was employed by it he was accidentally injured on January 23, 1927, and avers that it

"* * * paid to plaintiff herein, as compensation, during the period of disability, the sum of $368.50, which said amount covered compensation for a period of twenty-seven weeks, from date of accident, January 27, 1927, to August 1, 1927, being sixty-five (65%) per cent of a weekly wage of $21.00."

The lower court found that plaintiff was earning at the time of the accident $24.00 per week, and awarded him compensation at 65% of that amount, or $15.60, for 400 weeks, subject to a credit of $338.35 already paid.

Defendant prosecutes this appeal.

OPINION

Plaintiff was injured on January 23, 1927, and the case was tried on January 11, 1928.

From the date on which plaintiff was injured up to and including the date of trial, he was totally disabled as a result of his injuries to do work of any reasonable character; in fact he was totally incapacitated to do any work at all involving physical exercise.

At the time of the trial, he was wearing a steel brace which extended from the hip joint to the sole of his foot, and he could walk only with the aid of crutches. His knee joint was "practically immobilized," only a slight degree of flexion being possible upon removing the brace.  The x-ray reveals a fracture at the junction of the lower and middle thirds of the right femur—

"* * * with a bowing outward about an angle of thirty degrees (quoting Dr. Wright's report).  A steel plate is seen intact on the exterior of the bone.  There is rarefaction of the boney substance about the fractured area.  The humerus shows an extensive comminuted fracture of its lower end which apparently involves the joint with the fragment displaced, seemingly inward and everted * * * he has a low grade infection of the bone at the site of the injury as a result of the steel plate being as yet intact."

As to the condition of plaintiff's arm, Dr. Wright, in his report, said:

"The right elbow is distorted and the carriage angle destroyed. There is an inward bowing of the lower end of the humerus. Compensatory function of the elbow joint is apparently excellent. Extreme extension is impossible but he uses the joint with great ease."

Dr. Wright testified that there is callous union of the fracture of the arm, and was asked if there was any stiffness in the arm, and he said:

"He does not get complete flexion out of it; it is 25% normal."

Asked if he could estimate the percentage of disability to the arm, he said:

"Not greater than 25%."

Asked what plaintiff could do with that arm, he said:

"As far as I could tell, he has perfect function of the hand and he has about this much flexion (demonstrating)."

The testimony shows that in treating the fracture of plaintiff's leg the physicians used what is called a Layne splint, which is a metal plate attached to the bone by four screws, the purpose of the plate being to hold the ends of the bone in place during the process of healing.

There were three physicians, Dr. Wright, Dr. Hemley, and Dr. Evans, called as witnesses, each of whom was of the opinion that nature had provided, at the point of fracture, an abundant amount of callous, but that the callous substance had not ossified or hardened into bone, as in ordinary cases, due, as they thought, to the presence of the metal plate and to the fact that one of the screws intended to hold the plate in place was inserted into the fracture, all of which produced irritation and a low degree of infection.

In sum, each of the physicians testified that at the time of the trial plaintiff was totally disabled, and all were of the opinion that his disability is permanent, unless relief is obtained by subsequent treatment.

This condition having continued over a period of one year, from the date of the injury to the date of the trial, under the law and the settled jurisprudence plaintiff is entitled to full compensation during disability, not exceeding 400 weeks.

But defendant, in oral argument before this court, and in briefs filed (not in answer) contends, first, that conceding that plaintiff has lost the use of a leg, he can be granted compensation for no more than 175 weeks, as that is what the statute provides for the amputation of a leg, and the total loss of the use of a member is equivalent to the amputation thereof; and, further, that there is no proof that plaintiff has lost the use of his arm entirely, and that at most compensation for the arm should not exceed 25% of the amount fixed by the statute for the total loss of the use of an arm (200 weeks), for that is the percentage of disability to the arm which the physicians think plaintiff has sustained; and, in the second place, it is urged that plaintiff should submit to further treatment which they propose at their expense in order to minimize his disability.

Taking up these points in the order named.

It is true that paragraph 14 clause (d) subsection 1 section 8 of Act No. 85 of 1926 provides that—

"A permanent total loss of the use of a member is equivalent to the amputation of the member."

And paragraph 8 clause (d) subsection 1 of section 8 fixes the compensation for the loss of a leg at 65% of wages during

175 weeks and for the loss of an arm (paragraph 6) during 200 weeks; so that if plaintiff had lost both an arm and a leg, under a literal construction of these sections and without regard to other portions of the act, he could not recover compensation for more than 375 weeks. It is also true that paragraph 15, clause (d) subsection 1 of section 8 provides that in all cases involving a permanent partial loss of the use of function of the member mentioned hereinabove

"* * * compensation shall bear such proportion to the amounts named herein for the total loss of such member as the disability to such member bears to the total loss of the member"

so that if the disability to plaintiff's arm is only 25% he would be entitled to compensation for only 50 weeks, or a total of 225 weeks for both.

But those provisions of the statute to which we have referred have, we think, no application in cases where there is an injury to both a leg and an arm, the combination of both injuries being such as to produce total disability to do work of any kind. And that is the case here.

The plaintiff, as he stood before the court on the day the case was tried, one year less twelve days after he was injured, was a physical wreck so far as any kind of manual labor is concerned. His wounds had not healed, he was sore and lame, and he could get about only with the use of crutches. All in all, he was totally incapacitated to labor. If there was any kind of work he could do at that time, counsel have not suggested what it was.

Under such conditions, we must give effect to clause (b) of subsection 1 of section 8 of the act which provides that

"For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond four hundred weeks."

shall be paid.

In fixing the amount of compensation due an injured employee by his employer we should not select and give effect to those provisions of the act alone which appear to be favorable to the employer and thereby minimize his liability and at the same time exclude and disregard other sections of the act which may, on first blush, appear to be conflicting.

To hold that plaintiff, having received injuries to both a leg and an arm, which injuries combined have unquestionably totally disabled him, can be awarded no more than the total fixed by the statute for a leg and an arm, would, in effect, be to read out of the statute that provision for compensation for total disability during the period of disability not exceeding a fixed period.

It was not intended, of course, that these provisions of the statute fixing the period over which compensation should be paid for the loss of a member or the loss of the use thereof, should overshadow those provisions for the payment of compensation during disability. The different provisions of the act should, if possible, be so construed as to harmonize, and each given effect in its proper place, and we think that can be done.

Under paragraph 5, clause (d), subsection 1 of section 8 of the act, an employee receives compensation during 150 weeks for the loss of a hand, and under paragraph 7 he receives compensation for 125 weeks for the loss of a foot, or a total for the two of 275 weeks; and yet under paragraph 10 of the same clause, subsection and section, for the loss of "one hand and one foot" he is paid the same per centum of wages for 400 weeks or 125 weeks more

than the total allowed under paragraphs 5 and 7.

According to the argument of defendant's counsel, there is a conflict, because they say, in effect, that in cases where there is a loss of two members the most that can be allowed is the sum of the allowances for each of the members.

We see no conflict. It is evident that the legislature took into consideration the seriousness of a laborer losing a hand and a foot at the same time, which in all probability would result in total disability, whereas the loss of either might only slightly impair one's capacity to earn wages.

Our attention is called to the case of James vs. Spence & Goldstein, 161 La. 1108, 109 South. 917, where the employee sustained an injury to the hand, and the court said:

"His injury has unfitted him for the only two occupations he knows anything about, that of carpentering and that of farming."

And yet the court allowed him to recover as for the total loss of the hand only.

There seems to be an impression that the effect of the court's holding in that case is that if the injury is only to a member of the body the injured employee can recover no more than the amount stipulated for the loss of the use of the member, even though the injury has produced total disability. Such was not the court's holding.

True, it is said that plaintiff's injury "unfitted him for the only two occupations he knows anything about;" but it was not held that he was totally disabled. Quite the contrary. The plaintiff there admitted and the court observed that he was only partially disabled. Said the court:

"That plaintiff's case falls within subsection (c) seems to be clear."

The act under consideration was No. 216 of 1924. Subsection (c) paragraph 1 section 8 of that act provides for payment during partial, not total, disability. The court had under consideration a case where admittedly the disability was only partial. Our Supreme Court has never held (nor has any other, so fas as we know) that in a case where, as the one at bar, an employee has received injuries to his members such as to produce total disability to labor he can recover no more than the price set upon these members.

Defendant's second plea is equally unavailing. The case was tried on January 11, 1928, one year after plaintiff was injured. On that date defendant, in open court, by written motion, offered to have plaintiff treated at its expense and asked that he be ordered to submit to such treatment and in event he refused "that defendant be relieved from paying further compensation," and the court refused to grant the order.

Defendant's motion and request are grounded upon the theory, which is sound, that an injured employee cannot refuse to accept harmless treatment at the employer's expense, which treatment would in all probability relieve his disability. But defendant, under the circumstances of this case, is in no position to invoke that rule as a defense to the action brought against it.

Defendant tendered aid to the plaintiff for the first time on the day the case was called for trial, one year after the injury. Paragraph 5 clause (k) subsection 2 of section 8 of the act provides that the employer shall in every case coming under the act furnish medical and surgical aid to the injured employee to an amount not ex-

ceeding $250.00. But during the year which elapsed between the date of injury and the date of trial, defendant expended nothing to relieve plaintiff but, on the contrary, sent him to the Charity Hospital in Shreveport where he received the only medical aid and treatment he ever had. On May 28th he was discharged from the Charity Hospital as cured. But he was not cured, and there seems to be no reason why defendant should not have known that.

Defendant paid plaintiff compensation up to August 13th, when the payments were discontinued. Plaintiff was still disabled. From August 13th to January 11th, a period of five months, plaintiff was abandoned by defendant, notwithstanding his disabled condition, and notwithstanding defendant had not expended nor offered to expend for his relief the amount fixed by statute.

Plaintiff's right of action for full compensation had fully accrued when the suit was brought, and it was only on the day the case was called for trial that defendant offered to do anything for him. On that day it asked that he be ordered to accept treatment, and in event he refused, it be relieved from paying "further compensation," when it had paid him nothing in five months, and did not then offer to pay that which had already accrued, nor did it offer to pay compensation during the disability which would necessarily result from the treatment it then offered.

We held in Martin vs. Wyatt Lumber Co., 4 La. App. 157, and again in Smith vs. Butler, 7 La. App. 338 (Advance Reports, No. 21, February, 1928), that an injured employee cannot refuse to accept simple and harmless treatment at the expense of the employer and thereby extend the period of disability, and we adhere to those decisions; but they are not controlling in this case.

In the Martin case, the employer, immediately after the injury, offered to have plaintiff operated on for hernia at its expense, but we refused to order him to accept that treatment because it was held that an operation for hernia carried with it an element of danger to life.

In the Smith vs. Butler case, the injured employee was being treated by the best surgeons at the expense of defendant. The defendant and the surgeons stood ready, willing and anxious to continue the treatment but plaintiff refused to accept further treatment and refused to permit the surgeons to complete the treatment which they had begun, and we held that his continued disability was due to his own fault.

In the case at bar, defendant had never at any time refused treatment; he had never been offered any, but, on the contrary, had been left to charity and to shift for himself for a long period of time.

Under the circumstances, defendant could not defeat plaintiff's cause of action, already accrued, by then offering further treatment.

The court fixed the fees of Dr. Evans and Dr. Hamley at $50.00 each. Counsel for defendant say these fees are excessive, and should be reduced.

The act provides that the fees of medical experts shall be reasonable and shall be taxed as costs as in other civil proceedings. The amount, according to Act No. 19 of 1884, page 25, should be fixed by the court with reference to the value of the time employed and the degree of learning or skill required.

We do not minimize the value of the time and skill of physicians, but we think the fee allowed in this case excessive. They were on the stand only a short time. In other cases we have allowed

$15.00, but inasmuch as these physicians had each examined the plaintiff before being called, we think a fee of $25.00 to each is reasonable, and the judgment should be so amended as to allow that amount.

The lower court awarded plaintiff compensation as for permanent total disability for a period of 400 weeks. This was error. He is entitled to compensation during disability, not beyond 400 weeks.

The judgment is therefore amended so as to award compensation during disability, not beyond 400 weeks, and further, reducing the fees of Drs. Hamley and Evans from $50.00 each to $25.00 each, and as thus amended it is affirmed.