## BARR v. DAVIS BROS. LUMBER CO., Limited. *

### No. 5076.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1935.

Theus, Grisham, Davis & Leigh, of Monroe, for appellant.

J. Norman Coon, of Monroe, for appellee.

DREW, Judge.

Plaintiff instituted this suit for compensation in the amount of $5.85 per week, for a period of 400 weeks, less a period of 125 weeks, during which time compensation was paid to him.

For a cause of action plaintiff alleged that on December 9, 1931, while in the employ of defendant company as a log cutter, and while assisting a fellow employee in sawing down a tree and cutting it into logs, he was accidentally injured by a log falling as it was cut off near the stump, which struck his left leg and pinned him beneath said log. He alleged that in said accident he received the following injuries:

"Both bones in his left leg were broken in two, which has caused him constant and severe pain and severe suffering from the date of the accident to the present time; and that said broken bones of his leg were not properly united, and that there exists a severe malunion of the broken bones of said leg, which has resulted in the shortening of his left leg, with considerably bowing inward and forward at the site of the broken bones, with anterior angulation of the tibia shaft and an eversion of his left foot, all of which has greatly disturbed the alignment of his left knee joint, and that the nerves in his leg, and particularly around the place of the broken bones and malunion have been pressed upon, stretched, cut, severed, bruised and otherwise damaged and involved, which, together with the deformity which he has received as aforesaid, have caused him to suffer severe and constant pain and particularly in the area of his left lower extremity, and that said pain becomes more exaggerated upon any kind of exercise, work, or exertion of any kind."

Plaintiff admitted that he had been paid compensation for 125 weeks.

Defendant filed an exception of no cause of action, and before same was argued or pass-

ed upon by the court, answered, denying the employment of plaintiff; that he was injured in an accident arising out of and in the scope of his employment. It denied being indebted unto plaintiff in any amount for the reason it had paid compensation to him for 125 weeks for the loss of use of a foot, and had paid all medical and hospital bills in connection with the treatment of said injuries received by plaintiff; that plaintiff's injury was compensable under the provisions of section 8, subsec. 1, par. (d), subpar. 7 of Act No. 242 of 1928 (page 357), and that compensation due thereunder was for only 125 weeks.

The original petition was filed May 29, 1934; the exception of no cause of action and answer of defendant were filed July 23, 1934, and the case fixed for trial by agreement for November 27, 1934. On November 14, 1934, plaintiff filed a supplemental petition in which he set out the following:

" * * * That in petitioner's original petition in paragraph 6, he alleged that as a result of the bones in his left leg being broken, there resulted a shortening of his left leg; and now in this respect, petitioner shows that in truth and in fact his left leg has become two inches longer than his right leg and that, therefore, petitioner labored under an erroneous impression of the facts, regarding his condition in this respect when he filed his original petition.

"III. Petitioner further shows that on account of said accident and injuries he received, as alleged in his original petition, his left leg was made longer than his right leg and that this in turn caused to develop and there now permanently exists a tilting of his pelvis with the left iliac crest being higher than the right by about four inches. In this connection, petitioner shows that this condition has caused him to lose his proper balance and equilibrium in walking and that his equilibrium has been disastrously disturbed and that the general axis of his body carriage is so markedly disturbed as to cause the weight of his body to be thrown in an abnormal axis, and that this consequently makes him a cripple, maimed and lamed, and an afflicted person, all of which condition will remain permanent.

"IV. Petitioner further shows that by reason of his accident and injuries as aforesaid, and as alleged in his original petition, and by reason of the tilting of his pelvis, there has also developed an abnormal curvature of his spine and spinal column and a resulting separation and widening of the vertebrae of the lower part of his spinal column and that said injuries have caused your petitioner to develop and now have a scoliosis of the sacral and lumbar spine and spinal column.

"V. Petitioner now shows that because of the leg injury he is now suffering the said abnormal position and condition of his pelvis and abnormal curvature of his spine and that this condition is attended by pain and causes your petitioner to suffer constantly, and which condition will be permanent, and a great amount of pain in his back, spine, spinal cord, his entire nervous system and especially the nerves that supply the area of his back and lower back, pelvic region and both of his lower extremities. and especially his left lower extremity and that all of the muscles, tissue, ligaments, tendons, blood vessels, nerves and other anatomy in the area of his back, spine, spinal column, pelvic region and lower extremities are severely stretched, abnormally pressed upon, torn, severed, bruised and otherwise injured so as to cause your petitioner to suffer a great deal of pain constantly and which is increased upon any exercise of any kind; and will be permanent.

"VI. Petitioner now shows that when he received said accident and injuries including the fracture of both of the bones in his left leg, there resulted considerable tearing and laceration of the adjacent muscles, nerves, tissue, ligaments and blood vessels and that as a result thereof there developed a considerable amount of scar and fibrous tissue in said area, which has constricted the nerves and blood vessels mentioned, to such an extent as to cause constant pain not only in the region of the fracture, but extending up the left lower limb to his hip, pelvis and back; and that in addition thereto the construction of the blood vessels in said lower extremities causes him to suffer a constant swelling in said leg and a deficiency in nourishment to the tissue, especially surrounding the site of the fracture.

"VII. Petitioner adopts and realleges all of the allegations contained in his original petition, except the portion contained in paragraph 6 of his original petition, wherein he erroneously stated that his left leg had become shorter than his right as a result of the injury received in said accident, whereas in truth, and in fact, the petitioner now avers that his left leg has become longer than his right as a result of said accidental injury."

Each and every article of the supplemental petition was denied by defendant.

On these issues the case went to trial below, resulting in judgment for plaintiff declaring him to be permanently and totally disabled to perform work of any reasonable char-

acter, and awarding him compensation for a period not to exceed 400 weeks. From this judgment, defendant has appealed.

The question to be determined here is whether plaintiff's claim is compensable, under the provisions of section 8, subsec. 1, par. (d), subpar. 7 of Act No. 242 of 1928, which amends Act No. 20 of 1914; or is it compensable under the provisions of section 8, subsec. 1, par. (b) of Act No. 242 of 1928?

Both bones of plaintiff's left leg were fractured. The tibia was fractured about middle way between the knee and ankle, and the fibula, about three inches below the knee. The fracture of the fibula was complete and misplaced, and union has taken place with approximately 60 per cent. end to end apposition. The fracture of the tibia was incomplete, with no misplacement, but in the healing process there was left a rather marked inward and forward bowing at the point of fracture. There was complete union of both bones, and both had completely healed at the time of trial below. The left leg is slightly shorter than the right.

The lower court, in arriving at this fact, had the following to say:

"It is also plaintiff's theory that in the healing process of the fractured bones the left leg was lengthened about one inch, making it one inch longer than the right leg; that this increase in length of the leg caused an elevation or tilting of the pelvis on the left side of an inch, and that, in turn, this elevation of the pelvis caused a lateral curvature of the spinal column. Plaintiff produced the testimony of three doctors to the effect that this abnormal condition exists, and that it is a condition sufficient to cause plaintiff a great deal of pain in the region of the pelvis and back.

"Dr. E. B. Lehman, a roentgenologist, made x-ray pictures of plaintiff's legs and pelvic region. He testified that, according to the disclosures of these pictures, plaintiff's left leg was an inch longer than his right, that the left side of the pelvis had been tilted on account of this extra length of the leg about an inch, and that plaintiff is afflicted with a curvature of the spine. Dr. C. P. Gray and Dr. H. S. Coon, physicians and surgeons, testified that they had made careful physical examinations of plaintiff and had examined the x-rays made by Dr. Lehman, and, using the information gained from both sources, they each testified that in the healing of the fractures, the left leg had been made one inch longer than the right, that the pelvis, on account thereof, has been tilted or elevated an inch, and that this tilting of the pelvis has caused a curvature of the spine. They testified that measurements of plaintiff's legs made by them verified their findings as to the increased length of his left leg.

"At the conclusion of this line of expert testimony, plaintiff closed his case. Thereupon counsel for defendant suggested to the court that the court, the plaintiff, the attorneys, and the doctors all repair to an anteroom, and that there, in the presence of the court, the doctors for both sides measure plaintiff's legs. The suggestion was approved by counsel for plaintiff and by the court. The measurements were carefully made, first with plaintiff in a standing position, and second, in a reclining position on a table. The measurements showed, beyond any doubt, and without any protest from anyone as to their correctness, that plaintiff's left leg was slightly shorter than his right leg.

"Defendant offered the testimony of an equal number of experts in contradiction of the plaintiff's experts. Dr. D. M. Moore, a roentgenologist, and Dr. John G. Snelling and Dr. W. L. Bendel, physicians and surgeons, testified for defendant. It is the testimony of these doctors that plaintiff's left leg is slightly shorter than his right. The measurements of his legs made by them in the presence of the court confirmed without any question their conclusions on this point.

"Plaintiff's claim that his left leg is longer than his right leg, and that his pelvis has been elevated an inch on account of that fact, and that, in turn, his spinal column has developed a permanent curvature is without foundation in fact or in theory. If it were not for the fact that this court has personally known plaintiff for a great many years and has always known him to be honest and truthful, the making of such a claim in this case would greatly discredit his whole case in the eyes of the court. I take it that in making such a claim he acted in good faith and upon the advice of his experts, and, therefore, should not be condemned for it."

Although the lower court was acquainted with plaintiff and vouches for his honesty and integrity, the very finding of the lower court, that the left leg was shorter than the right, destroys the case for plaintiff, as the pain he claims to have in the region of the back and pelvis is accounted for in no other way than by the left leg being longer than the right, thereby causing the pelvis to be tilted, and also causing the curvature of the spine. Therefore, when it is found that the left leg is the shorter leg, and that the pelvis is not tilted,

which the record likewise discloses, there is no injury to the pelvis, back, or to the spine, which was caused by the leg injury, and the sole injury resulting to plaintiff from the accident was the injury to the leg below the knee.

The doctors in the case differ as to the permanency of this injury. However, it is immaterial to a decision of the case, as plaintiff has been paid compensation for the loss of use of a foot, which is all he could have collected for an injury to the leg below the knee. Section 8, subsec. 1, par. (d), subpar. 7 of Act No. 242 of 1928; Calhoon v. Meridian Lumber Co. (La. App.) 151 So. 778; Id., 180 La. 343, 156 So. 412; James v. Spence & Goldstein, 161 La. 1108, 109 So. 917; Rodriguez v. Standard Oil Co., 166 La. 332, 117 So. 269; McGruder v. Service Drayage Co. (La. App.) 158 So. 252; Brown v. N. O. Compress Co. (La. App.) 160 So. 469.

Although it is true that plaintiff's leg, below the knee, is now bowed and deformed, due to the malunion of the bones, and prevents him from using it to walk without the aid of crutches, or to perform labor, it is only equivalent, under the provisions of the Compensation Law of this state, to an amputation of that member below the knee, for which he is entitled to compensation for 125 weeks, at the rate of 65 per cent. of his weekly wage. He admits he has received compensation in that amount prior to filing this suit.

It therefore follows that the judgment of the lower court is erroneous, and is reversed, and the demands of plaintiff are rejected, at his costs.