## LANGSTON v. RED IRON DRILLING CO. et al.

### No. 219.

District Court, W. D. Louisiana, Shreveport Division.

March 28, 1941.

Samuel P. Love and N. M. Ferris, both of Shreveport, La., for plaintiff.

Cook, Cook & Egan and Albert T. Hughes, Jr., all of Shreveport, La., for defendants.

PORTERIE, District Judge.

### The Fact Situation.

Harry Hanbury and the Red Iron Drilling Company owned together an oil lease on which the plaintiff herein, Louis L. Langston, an employee, had worked as a "switcher" for more than eight months when, on August 18, 1939, he was injured in the scope of his employment, when an ax which he was carrying was dropped by him on his left foot and this resulted in the complete loss of the great toe, of two small toes, and the partial loss of a third small toe. During the period of his employment at $150 per month Langston knew only Hogue, the agent of Hanbury, who remained on the premises and gave orders for all the work, and it is only after his injury, when the last check for three days' work was made out to him by the Red Iron Drilling Co., that he became aware of the partnership and the fact that during the whole period of his employment half of his salary had been paid by the Red Iron Drilling Co. He sued both Hanbury and the Company in the state court, where a compromise settlement was made with Hanbury, the amount paid being $550 and the consideration being a release of Hanbury from all liability under the Workmen's Compensation Act, with the clause in the judgment "that Louis Langston's rights against Red Iron Drilling Co. are reserved." Civil Code of Louisiana, Article 2101.

Langston then, again in the state court, entered a second suit against the Red Iron Drilling Co. for compensation at the rate of $20 per week for four hundred· weeks, alleging that Hanbury and the Company were partners, that he was an employee of the partnership and he was entitled to judgment against the unreleased partner, and joining to the suit the United Employers Casualty Co. as insurer. The suit was properly removed from the state court to the federal court and during the trial in this court the United Employers Casualty Co., upon motion of Langston, was nonsuited.

The defenses are: (1) that Langston was not an employee of the Red Iron Drilling Co.; (2) that if he was an employee of a partnership, having sued the members separately when he should have sued the partnership first, he has no right of action against the Red Iron Drilling Co.; (3) alternatively, that should the court hold Langston was an employee of an existing partnership, the discharge of Hanbury has been a release for one-half of plaintiff's total compensation claim and judgment herein should be only for the remaining half due; and (4) if the court should hold a joint venture to have existed, the exact amount due Langston cannot be determined by the present record; and finally (5) that if there be any liability for any compensation it is to be limited to the loss of the great toe and of the three other toes on one foot, the amounts to be taken from the Compensation Act and a sum thereof made, there being neither total nor partial permanent disability.

It is admitted that the accident occurred during the employment; that the salary paid was $150 per month, payable every half month, and the additional free use of a tenant house, which apparently was furnished by the employers to place Langston near the lease to better enable him, at all hours, to do the "switching" of the oil.

### The Discussion.

To establish the relation of partnership, the court was favored by the actual instrument between the two parties, with the testimony of the office man and bookkeeper of Mr. Hanbury and by the testimony of the secretary of the Company. A reading of the contract for the operation of the oil lease between Hanbury and the Company convinces us of the existence of a partnership, each owning a half of the working interest in the lease, each paying half of the labor and half of all costs of production, etc. We cannot say that Hanbury was the only employer of Langston,

138

though he received his checks from Hanbury for nearly the whole time of his employment. This is a bare technicality, for, after all, one-half of his labor was for the Company as well as for Hanbury; one-half of his salary was charged to the Company every month by Hanbury; and the final payment for the last three days he worked, being part of the half month that was due by the partnership, was paid Langston by a direct check of the Company. This is what gave this ignorant worker, earning but a small salary as a manual laborer, and who had to take things as he found them without having an opportunity or the means to make investigation, the first knowledge of the existing partnership.

The partnership, having for its purpose the drilling of an oil well, is an ordinary partnership. From the case of Green v. Hawkins & Antoon, La.App., 144 So. 271, at page 273, we quote: "We quite agree with defendants' counsel that a partnership engaged in drilling oil and gas wells is not a commercial partnership, under article 2825 of the Civil Code, but is rather an ordinary partnership, under article 2826 of the Civil Code. Then, if it is an ordinary partnership, the partners are not bound in solido for the debts of the partnership, but the liability of each partner is limited to his virile share."

The next question is to classify the injury of Langston under the Act. It is shown that he had suffered an injury to his left hand several years previously, leaving him only the thumb, the index finger, and half of the next finger.

Dr. Richardson, for the plaintiff, after testifying in detail, concludes by saying "No, I don't believe that he could do really hard manual labor." Dr. Abramson, again for the plaintiff, after testifying in detail, concludes by saying that in his opinion Langston is 50 or 60 per cent. partially and permanently disabled. After the previous work of Langston had been described to the doctor, the following question was asked him: "I ask you whether in your opinion, taking into consideration the double injury which the plaintiff has at the present time, whether or not he is totally disabled in doing that type of work." and the doctor's answer was: "Not totally disabled, in my opinion, no, sir." At another point of the examination the doctor was asked the question: "Now, coupling that amputation (the hand) with the amputation of the left foot, what would you say the

percentage as to his total impairment would be?" The answer was: "Approximately 50 or 60 per cent. disability of the whole body."

The manager of the personnel department for the Arkansas Fuel Oil Co., good witness as to the general policy of such agencies as followed by major companies engaged in oil exploitation, after having examined Langston in open court, testified unqualifiedly: "No sir, we would not hire him. We would not hire any man in that condition for any employment."

The manager of employment for Mr. Hanbury, when asked the question: "Would you re-employ Mr. Langston in his present condition to do that work?" (referring to the work done by Langston at time of his injury) replied "No sir." Then on cross examination the question was asked: "He can still be a switcher, couldn't he?" Answer: "Yes sir; there are certain things he could do, but in my opinion I do not believe he could go over the lease and do the work that he did before."

It would seem, therefore, that though Langston in truth is but partially disabled, he might as well be totally disabled as to his chances of finding employment with the major companies engaged in the work that he did for years. However, the court believes that Langston may find employment either with some independent company or some independent contractor engaged in oil-drilling operations, or could find employment as a soliciting or collecting agent for industrial insurance, for he stated that he had worked for years in the latter capacity. He has earned $20 a week for a short time, making collections for an insurance company, since the accident. Just before he was first employed by the partnership he worked at a filling station at Lakewater, Texas, for as long as a year and a month, at $15 a week; just before this latter work he solicited for industrial insurance for eight months at $20 a week; just before this, in Kilgore, Texas, he worked for about eight months for the Hollingsworth Drilling Company dressing tools at $150 per month; just before this he had been employed by an insurance company in Austin, Texas, making $90 a month; just before this the Shell Oil Co. of Smackover, Ark., employed him as a roustabout (general hard manual labor at drilling oil wells) for five years at $135 a month, and it is at this time that he had his left-hand injury.

We believe he could work soliciting and collecting for industrial insurance and make about $80 a month, even though we realize that he could not walk for as long as formerly. He is not permanently totally disabled, but we do consider that he is permanently partially disabled.

We cannot legally and justifiably say that subsections 3 and 4 of paragraph 1(d) of Section 8 of the Act, as amended by Act No. 242 of 1928, p. 357, Dart's La.Stats. § 4398, would apply, which would be the giving to him of 65% of his wages during 20 weeks for the great toe, and 65% of his wages during 10 weeks for each one of the other three toes; because, conscientiously, we must aggregate his injuries and the other part of the Act comes into play providing for permanent partial disability. See the cases under 3(a), Findings of Fact.

### Findings of Fact.

By a clear preponderance of the evidence:

■ 1. (a) Louis L. Langston, the plaintiff, was, at the time of his injury, the employee of Harry Hanbury and of the Red Iron Drilling Co.;

(b) Was employed at a salary of $150 per month; and

(c) Was injured in the scope of his employment.

■ 2. (a) Harry Hanbury and the Red Iron Drilling Co. comprised an ordinary partnership engaged in the drilling and exploitation for oil on a certain tract of land, and at the particular time of injury there is no doubt that their injured employee was being paid his salary, one-half by each member of the partnership.

■ 3. (a) Louis L. Langston is partially and totally disabled. Porter v. Alfred S. Amer Co., 146 La. 618, 83 So. 852; Brooks v. Peerless Oil Co., Inc., 146 La. 383, 83 So. 663; Stokes v. Sondheimer Co., 8 La.App. 745.

(b) Langston can earn a livelihood in another character of employment than the one he followed at the time of his injury, and this was proved to be the selling of insurance, in which he engaged for some years before his oil drilling work and in which he has been engaged for a short time since his injury.

(c) His salary since his injury in the insurance work is $80 per month.

(d) Sixty-five per cent. of the difference between his wages at the time of injury and the wages which he is able to earn now is $11.38 per week.

4. (a) Langston owes the sum of $40 to his doctor.

### Conclusions of Law.

■ 1. The Workmen's Compensation Law of Louisiana is applicable. Act No. 20 of 1914, as amended by Act No. 243 of 1916, Act No. 38 of 1918, Act No. 247 of 1920, Act No. 43 of 1922, Act No. 216 of 1924, Act No. 85 of 1926 and Act No. 242 of 1928.

2. Each partner is liable for "his share of the partnership debt." Civil Code of Louisiana, Article 2873; Articles 2824–2826, and 2872–2874. Green v. Hawkins & Antoon, La.App., 144 So. 271; Farnsworth & Co., Inc., v. Estrade, Cotton & Fricke, La.App., 166 So. 160; Gibbons, Inc., v. S. & B. Stable, La.App., 144 So. 641; Posey v. Fargo, 187 La. 122, 174 So. 175.

■ 3. The discharge of Hanbury, one of the two members comprising the ordinary partnership, in the compromise settlement in the state court (No. 77938, First District Court, Caddo Parish, La., entitled Louis L. Langston v. Harry Hanbury) has been full payment for one-half of plaintiff's total compensation claim; liability of the present defendant can be only for the other one-half of the total compensation for the injury. Civil Code of Louisiana, Article 2873, and cases supra.

4. The portion of the Workmen's Compensation Law of Louisiana applicable reads as follows (Sec. 8, subsec. 1(c) of Act No. 20 of 1914, as amended by Act No. 242 of 1928, p. 357, Dart's La.Stats. Sec. 4398, subsec. 1(c):

"For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond three hundred weeks."

■ Accordingly, there should be judgment herein in favor of the plaintiff, Louis L. Langston, and against the defendant, Red Iron Drilling Co., in the sum of five and 69/100 ($5.69) dollars per week during the period of partial total disability of the said Langston, not, however, for a longer period of time than three hundred weeks, and in the further sum of twenty and

no/100 ($20) dollars, with 5% interest from date of judicial demand, until paid, and for costs.

Judgment will be signed accordingly upon presentation.