This is an action for compensation in which plaintiff claims to have sustained an accidental injury on June 1, 1942, while employed by defendant on a construction job. Plaintiff seeks compensation for total permanent disability resulting from an injury to the Achilles tendon of his left leg.
This case was tried first on December 4, 1942, and a retrial was had on October 15, 1943. After the first trial judgment was rendered awarding plaintiff compensation at the rate of $13 per week for the period from date of the accident to date of March 4, 1943, on the ground that plaintiff had suffered a temporary partial disability from *Page 284 
which there would be complete recovery by date of March 4, 1943. After the new trial, the Court found that there was a permanent partial loss of plaintiff's foot resulting from the injury, which was fixed by the Court at 38%, and compensation was awarded at the rate of $4.94 per week for a period of 125 weeks. From this judgment plaintiff has appealed and defendants have answered the appeal, praying that the judgment be amended by decreeing plaintiff has already been paid all compensation due, and rejecting his demands for further compensation.
The facts show plaintiff to be a negro man, about 52 years of age, who worked as a mortar mixer. This work comprehended a knowledge of mixing mortar, which testimony shows could be acquired in a comparatively brief period of time, and which occupation, we believe, the judge of the District Court correctly classified as semi-skilled labor. In addition to the actual mixing of mortar, it is shown that plaintiff's duties required him to erect scaffolding for plasterers and bricklayers, and, in most instances, to service these mechanics by carrying the mixed mortar to the point where they were engaged in working. If a workman were occupied at a height of not more than a second-story level, the testimony shows that the mortar mixer ordinarily stood upon the handles of his wheelbarrow and hoisted the mortar to the scaffolding platform by means of a long handled shovel. However, if the work was being performed at a higher level, the mortar carrier was required to climb a ladder to the scaffolding in order to deposit the mortar thereupon.
While engaged in erecting a scaffolding for plasterers on June 1, 1942, a collapse of the scaffolding threw plaintiff to the ground and one of the timbers fell across the back of his left leg above the ankle, injuring the Achilles tendon. The nature of the injury involved a severe bruising of the tendon, and, according to some of the medical testimony, a rupture of blood vessels therein. The effect of the injury was that the tendon became swollen and enlarged to a considerable degree. The clear preponderance of the medical testimony adduced shows that the tendon became swollen to approximately twice its normal size, which condition endured even until the time of the second trial, some 15 months or more after the accident.
It is established that plaintiff has performed no work since the date of the accident, and, according to his testimony, he continued to suffer such pain that he was totally unable to perform any character of manual labor. Plaintiff's testimony, in some degree at least, is substantiated by a number of his neighbors and friends, who testified that they had never known him to work since the date of the injury, nor had they observed him walking without the use of a cane.
The sole question involved in this case is the extent and effect of plaintiff's injury.
Upon the first trial of the case the medical testimony was limited to that of one expert produced by plaintiff and one on the part of defendant. On the second trial plaintiff introduced testimony of two other medical experts, while defendant filed in evidence a written statement, by stipulation, of the physician who had testified at the first trial, and further offered the evidence of a physician who had been appointed by the Court to make an examination. In his written opinion, after the second trial, the learned Judge of the District Court analyzed the various estimates of disability as made by the different physicians, which estimates ranged from an opinion that no disability whatever existed to the opinion that plaintiff had suffered complete disability.
The case of Haynes v. Silas Mason Co., La.App., 16 So.2d 137, was regarded by the District Judge as being directly in point, and his opinion was based upon the holding of this Court in that case. We regret that we cannot concur in this conclusion. In the Haynes case the facts, as definitely and conclusively established, proved that Haynes, at the time of trial of his suit, was able to work, and, as a matter of fact, had actually been working at wages exceeding those he received at the time of the injury. Our conclusion in the Haynes case was based upon the proposition that he was disabled to do work of the same kind or character performed in the trade he was accustomed to follow. We called attention to the fact that the provision of the statute with regard to the performance of "work of any reasonable character," Act No. 242 of 1928, p. 357, § 8, subsec. 1 (a-c) must be interpreted as above stated. It was shown that Haynes had partially lost the use of the function of his right arm insofar as following his trade as carpenter and blacksmith was concerned. The estimates of medical experts in the Haynes case showed that there was *Page 285 
only a partial loss of function of plaintiff's arm, but called attention to the fact that even such a partial loss, as a practical proposition, would prevent the employment of the individual so injured.
The difference in the Haynes case and the case before us, in our minds, is obvious. This plaintiff has not been able to work since the date of the accident, and at the time of the last trial was unable to work, and was suffering pain.
The case of Barr v. Davis Bros. Lumber Co., 183 La. 1013,165 So. 185, discloses facts in connection with injury very similar to those involved in this case. It was shown that plaintiff's injury was confined to a point between the knee and the ankle, and it was contended, as a matter of defense, that the injury, therefore, did not amount to more than the loss of the use of a foot. Judgment of the District Court awarded plaintiff compensation for total permanent disability, which judgment, however, was annulled by the Court of Appeal, Second Circuit, and plaintiff's suit dismissed, payment of compensation for a period of 125 weeks, plus medical expenses having been shown. 161 So. 664. The Supreme Court, in an opinion by Justice Fournet, thoroughly discussed the point at issue and held that the provision of the Act limiting recovery to 65% of wages during 125 weeks for loss of a foot, and that total loss of the use of a member is equivalent to amputation of the member, does not take precedence over the sections providing for compensation on the ground of total permanent disability, but is intended rather to supplement such provision.
Under this ruling, if it be shown that plaintiff in this case indeed suffers from total permanent disability, it is clear that judgment awarding compensation based on the loss of a foot is erroneous.
Some attempt is made on behalf of defendants to show that plaintiff "could work if he wanted to," but this conclusion is not borne out to any appreciable degree whatever by the record in this case.
It must be conceded that the existence vel non of pain is a matter that cannot either be definitely established or refuted. However, in a case such as this, where evidences of swelling and of abnormal enlargement of the injured tendon have existed for more than 15 months, we are definitely of the opinion that such facts tend to substantiate plaintiff's claim that he suffers considerable pain.
It is also contended on the part of defendants that mortar mixing does not require any extensive use of the Achilles tendon of the foot, and there is some testimony to the effect that a mortar mixer can stand flatfooted at his mortar trough, hour after hour, without requiring the flexing or the extension of the Achilles tendon. However we might ordinarily regard this testimony in the light of reason and experience, it is not necessary that we predicate our findings upon this point, since this plaintiff in following his trade of mortar mixing was required not only to actually mix mortar but to erect scaffolding, climb ladders, carry mortar, and perform other physical labors, which beyond question called for the use of the injured tendon.
In the case of Lee v. International Paper Co., La.App.,16 So.2d 679, 681, this Court said:
"Our law does not require a man to work after having been injured if working causes him pain due to that injury and to do so would abolish in part, at least, the humane theory of the Compensation Act."
Another contention made by defendants is that there have been a number of instances in which "peg-leg" men, or men with artificial limbs, have been able to satisfactorily perform the duties of a mortar mixer. So far as this Court knows, or is informed, pain is not suffered in a peg-leg or an artificial limb. Since the plaintiff in this case still retains his entire leg, we cannot subscribe to the applicability of facts existing with regard to an individual who has suffered the loss of a leg.
An additional claim is made that even if plaintiff is unable to follow his trade as a mortar mixer, he is still capable of working at ordinary manual labor. This argument would have material effect upon the case, since the difference between the scale of pay for common labor and for mortar mixing is shown to be only about ten cents an hour. With reference to this contention, however, we feel again impelled to observe that it has not been established that plaintiff is able to perform ordinary manual labor. If he suffers pain from the use of his foot, and if he could not get about without the assistance of a cane many months after the injury, we feel that the conclusion is inescapable that he could not satisfactorily perform the physical tasks imposed even by common manual labor. *Page 286 
The final question involved in this case is with reference to the computation of plaintiff's wages. It is claimed in plaintiff's behalf that any award should be fixed upon a six-day week, while defendant argues that plaintiff actually worked only five days per week. The interpretation of the provisions of the statute as to what constitutes a weekly wage has been given in a number of instances, particularly in the case of Ricks v. Crowell Spencer Lumber Co., La.App., 189 So. 466, in which it was held that the weekly wage of an employee for compensation purposes should be computed on the basis of a six-day working week, despite the fact that the employee may normally have worked a less number of days per week. However, plaintiff's own testimony in this case establishes the fact that he was employed by the hour at a rate of fifty cents per hour, and that he worked eight hours per day, five days per week. By agreement, and with permission of the Court, defendant was permitted to set up this defense by verbal amendment.
While it is true that employment by the hour at a stipulated rate has no effect upon application of the theory of a six-day week, it is also established that the contract of employment must govern each individual case. The testimony in this case shows that plaintiff worked a five-day week, and, accordingly, we are of the opinion that this must be accepted as the basis for compensation.
Plaintiff herein also seeks recovery of medical expenses, but an examination of the record convinces us that these expenses have not been established with sufficient certainty to serve as the basis for a judgment, and, accordingly, they should be disallowed.
For the reasons set forth the judgment of the District Court is reversed and set aside, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff and against the defendants, D.O. Furr and the Traders General Insurance Company, in solido, awarding plaintiff compensation at the rate of $13.00 per week for the period of permanent total disability, not, however, beyond 400 weeks, beginning June 8, 1942. It is further ordered that each weekly installment payable under this judgment bear legal interest from its due date until paid; and it is further decreed that this judgment shall be subject to the allowance of credit of $513.50 heretofore paid. The demands of plaintiff for medical expenses are rejected. All costs are to be paid by defendant.
 On Motion for Rehearing.