55 La. App.

No. 2888

Second Circuit

---

## HUNTER

v.

## LOUISIANA ICE & UTILITIES CO.

---

(June 28, 1927. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Master and Servant —Par. 159.**

In suits under the Workmen's Compensation Act, where the employe, as a result of an injury, is disabled over a long period of time and is disabled on the date of the trial, and there is no testimony which enables the court to fix with any degree of certainty the duration of his disability, the court will grant compensation during disability, not exceeding the period fixed by the statute.

2. **Louisiana Digest—Master and Servant Par. 154, 159.**

Where an employe's hand is injured so as to cause disability to do manual labor of a reasonable character, he is not entitled to compensation for a period exceeding 150 weeks even though the period of disability exceed that length of time the total loss of the use of the hand being equivalent to the amputation thereof.

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Rapides. Hon. R. C. Culpepper, Judge.

Action by Hezekiah against Louisiana Ice & Utiltities Co., Inc.

There was judgment for plaintiff and defendant appealed. Judgment amended and affirmed.

Isaac Wahlder, of Alexandria, attorney for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

ODOM, J. Plaintiff. was employed to work for defendant and while so employed a co-laborer upset a bucket of hot tar on the back of his hand, inflicting a severe burn. The injury resulting from the burn instantly caused total disability to perform labor of a reasonabe character. He brings this suit to recover compensation based upon 65 per cent of his wages for the period of his disability, not exceeding four hundred weeks.

The defense is that plaintiff received only slight injuries and had so far recovered at the time of the filing of this suit that he was able to do manual labor such as he was accustomed to do.

It is further alleged by defendant that plaintiff is a malingerer, and that if there was disability at the time of the filing of this suit it was on account of the fact that plaintiff had done nothing to improve his condition.

The lower court awarded plaintiff compensation at 65 per cent of his wages during a period of fifty weeks and also gave him judgment for the sum of $75.00, medical expenses incurred.

Defendant appealed, and plaintiff, in this court, filed a motion to amend the judgment by granting compensation for 150 weeks.

## OPINION

Immediately following the injury, two physicians, Doctors Luckett and Wilson, both furnished by defendant, treated plaintiff's hand for some time, the exact length of time not being stated, and finally discharged him, not as cured entirely, but apparently, because they had done for him all they thought was necessary, and suggested to him that he get light work and to exercise the hand and manipulate the fingers, as, in their opinion, with proper use and exercise of the hand it would soon be restored to its normal condition.

Plaintiff then applied to defendant for light work, but the manager, Mr. Harding, refused to employ him, because— "due to his being contentious about securing a lawyer, that I would not give him a job."

In the meantime plaintiff had not been paid any compensation, although he had been totally disabled for a period of some three months. The manager, however, told him previously that he would try to get the insurance company to pay him. Subsequently the plaintiff, not having recovered the use of his hand, procured the services of Doctor Cappel, who treated him for a period of about three months. Just what treatment he administered is not stated. His treatment, whatever it was, failed to relieve the hand, as is evidenced by the testimony of all the physicians who were called as witnesses in the case.

Plaintiff is a colored man, 34 years old, uneducated, can neither read nor write, and earns his living by manual labor. It is undisputed that the injury totally incapacitated him to perform labor such as he was capable of doing. He contends that he is still disabled and incapacitated.

Defendant, while not contending that plaintiff had fully recovered on the date of the trial, contends that his failure to recover and retain the use of his hand is due solely to the fact that he has neglected and refused to follow the instructions of the physicians who advised him to do light work and to exercise the injured hand; in other words, that plaintiff is a malingerer and stubbornly refuses to make proper use of

the hand in order to prolong the period of disability and thereby get compensation.

We are not impressed with the suggestion that plaintiff has wilfully neglected to use his hand in order to get compensation. All the physicians say, and we, of course, accept their opinion, on that point, that plaintiff's hand will improve with use and that without use and exercise and proper treatment there will be no improvement owing to the nature of the injury; and it is probably true that plaintiff has not used and manipulated the injured hand as he should; but according to all the physicians the hand is stiff and weak and the use of it causes pain and more or less swelling.

On the morning of the day of trial plaintiff's hand was normal in size. During the day Doctor Luckett, in the presence of Doctor Cappel, examined the hand, bent and manipulated the fingers, and later in the day it was found that the hand had swollen, the inference being that the bending of the fingers caused the work he suffers pain and his hand swells, swelling.

Plaintiff says that when he tries to and his statement to that effect is strongly corroborated by the opinions of all the physicians.

Our opinion is that plaintiff's failure to use his hand results from the fact that its use causes pain and swelling, from which he shrinks. Of course, the wise course for him to pursue under the circumstances would be to use the hand and endure the pain. That would bring about a more speedy recovery; but in dealing with him we must not overlook his lack of intelligence. It takes some courage and resolution for one to use a member of the body when the use of it subjects the individual to pain and suffering. It is no doubt hard for one of plaintiff's intelligence to understand that the use of the hand would benefit it, whereas a person of more intelligence would readily understand that. People should be judged according to their lights.

Then, too, it is shown that plaintiff was willing to work. When the physicians advised him to secure light work he applied to his former employer who refused him because he had consulted counsel about getting compensation.

Our conclusion, therefore, is, that plaintiff should not be put in the class of a malingerer.

In view of the fact that plaintiff had been totally disabled by the accident and had been paid nothing for several weeks, it was only natural for him to seek advice as to his rights under the law. Defendant should have relieved him of this necessity by paying the compensation which the law prescribed.

As to the injury and plaintiff's condition at the time of the trial, we find that he was burned on the back of the right hand with hot tar which, as before stated, produced total disability to labor. In the course of a few months the surface of the wound healed. As a result of the burn Doctor Cappel says there is scarred tissue which impairs the function of the tendons and the blood supply; that the blood circulation has not been restored to normal.

Doctor Landrem, who examined plaintiff three weeks before the trial which took place in the month of December, said:

"I find a hand that was slightly enlarged and in a swollen condition, with the loss of motion, loss of function."

And, again:

"He has an apparent loss of motion, with ankylosis of the bones of the hand, with a swelling also of the back of the

hand; in other words, it seems to me that he has a complete loss of function."

On cross-examination he stated that he did not intend to say that plaintiff had complete loss of function, but he reiterated that his fingers were stiff and that to bend them caused pain and swelling.

Doctor Rand, called by defendant, examined plaintiff's hand on the day of the trial, December 10th, some seven months after the injury. He said he found the posterior part of the right hand, extending to the base of the fingers shows multiple areas where the black pigment is missing from the skin, and that the hand is swollen over the extensor tendon of the index finger on the posterior part of the hand; that he has some limitation of motion, and that the swelling is apparently caused by fluid "which is probably due to the extravasation of fluid that gets into the tissue from the lymphatis and the blood stream has atrophied."

He was asked if ordinary manipulation of the fingers would cause the swelling which he found, and he said:

"If that finger had been at rest for a long time and was flexed up, I think possibly that it might have been produced in that way; or by a direct blow or any type of traumatism."

He said he found no suspicion of adhesion or nerve injury and further said:

"His hand at present presents a picture to me of an old injury and lack of use following same."

He was given the history of the case with its treatment by physicians and was asked his opinion whether plaintiff should have entirely recovered, and he said:

"It is hard to say what will occur with any individual case, but it is reasonable to think that recovery should have taken place by this time * * * I think that the lack of use of the hand is the principal factor in his present disability."

He further stated that the use of the hand at this time would cause pain and that the hand at present is impaired.

Doctor Luckett, another witness called by defendant, says there is no ankylosis and that with proper usage the hand should have healed. Asked as to the present condition of the hand, he said:

"I think there is loss of power there."

And, being asked if the plaintiff could do manual labor at the time of the trial, he said:

"I don't think so just now. oNt the same kind of work he has been doing."

This testimony establishes beyond question that plaintiff at the time of the trial, nearly seven months after the accident, was unable to do manual labor of a reasonable character.

As to the duration of plaintiff's disability, the experts as usual do not agree.

Doctor Cappel, one of the physicians, says:

"In my opinion it will require several months before he will be able to do the same work that he did before his burn."

He further stated that no one could give an approximate time over which the disability would continue.

Doctor Landrem being questioned on the same point, said:

"I would think that by proper manipulation of it, six to eight months would place that hand so that he could use it fairly well to make a living."

Doctor Rand was asked:

"Some time is going to elapse before he is going to be able to do hard manual labor. Isn't that a fact?"

And he answered:

"I think that that is true."

He was aagin asked:

"Doctor, in your opinion, what length of time will elapse before this plaintiff

will be in a position to pursue his occupation, that is, of manual labor?"

And he said:

"That question cannot be answered."

Questioned further as to his opinion, he said:

"If the plaintiff is serious in his intent to recover the use of his hand, and is properly directed in his endeavors, in my opinion he should do reasonable work between one and two months at the very limit."

Doctor Luckett treated plaintiff's hand a few times in the absence of Doctor Wilson who had charge of the case. He was asked how long it should have been after Doctor Wilson discharged the patient before he should have gained the proximate normal use of the hand, and he said:

"Well, that would be a hard question to answer. I can only give you an approximate estimate, and I would say three or four weeks with proper manipulation."

He stated that he personally did not discharge the patient—that was done by Doctor Wilson.

Doctors Wilson and Luckett discharged plaintiff approximately four months before the trial. Doctor Luckett's testimony shows that he and Doctor Wilson discharged him before he was cured, because he now says that with proper manipulation and properly directed in his endeavors the hand should have been normal in three or four weeks. They were employed by defendant and understood that plaintiff's hand needed manipulation under proper direction, and it is somewhat difficult to understand why they did not keep him in charge and properly direct him in his endeavors.

In view of the fact that plaintiff was injured on May 16th and that his disability continued on down to the day of the trial on December 10th, and the fact that he had been treated during that time by three physicians, two employed by defendant and one selected by himself, and in view of the further fact of the testimony of the physicians, above referred to, it is impossible for the court to fix with any degree of accuracy the period of disability.

The jurisprudence of this court, established by a long line of decisions, is that in cases where an employee is disabled over a long period of time and the disability is shown to exist at the time of the trial and there is no testimony which enables the court to fix with any degree of certainty the length of time such disability will continue, the court will not indulge in speculation or prophecy as to how long he should receive compensation but will grant compensation during disability, not exceeding the period fixed by the statute.

O'Donnell vs. Fortuna Oil Co., 2 La. App. 463; Chandler vs. Oil Fields Gas Co., 2 La. App. 778; Price vs. Gilliland Oil Co., 3 La. App. 175; Hutchinson vs. La. Cent. Lumber Co., 3 La. App. 413; Cobb vs. Gilliland Oil Co., 4 La. App. 531.

We have held, on the contrary, that where the injured employee had only slight injuries and had practically recovered on the days of the trial, and where the testimony showed that his disability would cease within a short time, the court should fix the period over which compensation should be paid.

Upshaw vs. Triangle Drilling Co., 5 La. App. 224; Mays vs. Allison Langston Supply Co., 5 La. App. 686.

Under the compensation law as it presently exists (Act No. 85 of 1926) the court may, for an injury producing temporary total or temporary partial disability, fix, in its discretion, the number of weeks over which compensation is to be paid, to be based upon the "probable duration of such disability."

That act was passed subsequent to the date on which this cause of action arose and is therefore inapplicable. It is cited merely to show the rule by which courts are to be governed in the future.. But if it were applicable to this case, the court could not fix the number 'of weeks in a case like this, because the testimony is not such as to enable the court to fix the probable duration of the disability.

As plaintiff's injury is to the hand and as compensation for the total loss of the use of a hand is fixed by the statute at 150 weeks, no compensation can be granted plaintiff beyond that period.

James vs. Spence & Goldstein, Inc., 151 La. 1108, 109 South. 917.

As to the allowance of $75.00 for medical service, we think that is correct. Physicians employed by defendant treated plaintiff for some time and discharged him. He was not cured. He then procured the services of Doctor Cappel who treated him for three months and made a charge of $75.00. Under the law plaintiff is entitled to medical services for an amount not exceeding $250.00. It is not shown that defendant expended this amount there is no suggestion that the amount of $75.00 allowed by the court, plus that already expended by defendant, will exceed the amount .fixed by the statute.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be amended so as to award plaintiff compensation during disability, not exceeding one hundred and fifty weeks, and, as thus amended, that the judgment be affirmed with costs.