No. 441

First Circuit

---

SOILEAU v. HILLYER-DEUTSCH-
EDWARDS, INC.

---

(May 7, 1929.   Opinion and Decree.)

---

Julius T. Long, of Shreveport, attorney for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

ELLIOTT, J.   Lawrence Soileau, an employee of Hillyer-Deutsch-Edwards, Inc., was badly injured while working in the woods on April 13, 1927, assisting in the operation of a steam skidder.   The injury was sustained while performing service arising out of and incidental to his employment and in the course of his employer's business.   Both bones in plaintiff's left ankle were fractured and broken, from which he alleges constant pain, resulting inability to do work of any reasonable character, and that he will not be able hereafter to do such work unless relieved by some kind of treatment or operation.. And if relieved in that way, there will still remain serious and permanent impairment in the usefulness of his ankle, knee, leg and foot, and of his nervous system, as a result of said injury.

He claims compensation at the rate of $8.75 per week, for 400 weeks, less weekly payments received, beginning the week of his injury and ending May 12, 1928.

The defense is that the plaintiff did not use his leg after his discharge from the hospital to which he had been sent by the defendant, as he was instructed to do. That such failure resulted in a longer impairment than would otherwise have re-

sulted, and a longer payment of compensation than he would have been entitled to otherwise. That compensation had been paid, up to May 12, 1928, at which time plaintiff had completely recovered. That he is not entitled to any further compensation.

The plaintiff answered defendant's appeal, and prays for judgment increasing his compensation up to the amount prayed for in his petition.

The real difference between the parties is as to whether plaintiff had fully recovered at the time his compensation was stopped; and if not, then to what further amount is he entitled.

The plaintiff testifies, and his statement is not disputed, that defendant, when making the last payment on May 12, 1928, told him through its agent that he had recovered and was able to return to work. Testifying in his own behalf as to his disability the plaintiff says that he was not able to commence work on May 12, 1928, as claimed by defendant. That he tried to fix some screens in a house during the month of June, but could not stand it and had to quit. That he next tried to help load some ties one evening in July, and the next morning his leg was swollen and pained him, remaining in that condition about two weeks, upon which he went to see Dr. Hargrove. That Dr. Hargrove gave him liniment to put on his ankle and told him that he was not able to work on it. Dr. Hargrove corroborates plaintiff. He says that plaintiff came to him in July, as plaintiff says he did. That he examined his ankle and told him he would have to rest, which meant that he should stay off his leg longer and give it further time before using it.

Plaintiff further testified, that his leg kept on hurting him after he saw Dr. Hargrove. That every time he went to work and walked on it a whole lot, it swelled up and pained him at night. That for the last three months before the trial he could only work, on an average, about half of his time, getting out ties, putting in two or three days a week. That he could not stand to do any more work because of his leg. That he makes from $2.00 to $2.50 per day when working making ties. That he cannot do the work he was doing at the time of his injury, because that work required a great deal of walking, getting over logs and moving about quick. That he cannot plow, because that requires too much walking. That his leg does not pain him much when he does not walk on it, unless he stands on it. That his leg was not swollen at the time physicians in the employ of defendant quit treating him, because at that time he did not walk on it.

The case was tried on October 22, 1928, which was about five months thereafter. Plaintiff, in response to questions as to his condition at the time of the trial, said:

"Q. What, if any trouble exists in your leg now?

"A. As soon as I walk my ankle doesn't move like it should; it hurts below my knee; it is weak and I can't use the leg at all."

Plaintiff's testimony on the question of inability is supported by that of several men who worked with him in getting out ties after defendant had stopped paying him. He is further and more strongly corroborated by several physicians, one of whom, Dr. Hargrove, had examined his leg in July, 1928, after he tried to resume work; and the others, for the purposes of the trial. He testifies that there is a large lump of callous formation on the lower ankle bone, the result of the injury,

which will permanently limit the motion and function of the foot. That there was also at the time of the examination and trial evidence of arthritis in his ankle at the place where it was broken; that the ankle was swollen, and in its present condition was causing pain and trouble. That the ankle was weak as a result of the condition it was in; that the weakness of the ankle and the pain and trouble it was causing at the time of the trial would likely improve in the future, but he could not say when it would take place, nor whether it would entirely cease. That plaintiff's left leg, as a result of the injury, was made a little shorter than his other leg; that the limited motion and function of the foot was permanent and would not improve. That plaintiff's condition constituted an impairment of his ability to do work, indefinite in point of time, that required much walking, standing or lifting. Several physicians gave testimony to the same effect.

Dr. Adair did not expect the irritation at the place of the break to grow less without operative interference. Dr. Sanderson says, that the condition of plaintiff's ankle causes him pain, for which there is no cure.

The physician in the employ of defendant who administered first aid to plaintiff, and who had examined him just before the trial, and two others, who had set and treated his limb at the hospital, and others who had examined plaintiff for the purpose of the trial, did not find any evidence of arthritis, and expressed the opinion that plaintiff had completely recovered the use of his leg and was able to perform the same work in which he was engaged at the time of the injury. The physicians could not agree, but the weight and the preponderance of the evidence is

to the effect that the motion and function of plaintiff's foot has been permanently limited and his left leg made a little shorter than the other; that arthritis exists at the place of injury; that the condition of his ankle is such that it is weak and causes pain; that the weakness and pain many disappear in future and may not.

It is shown that after receiving an injury of the kind received by plaintiff, manipulation, walking, standing and general use of the limb after the bones have united and the wound healed is necessary in order to get the best possible return of the member to its former condition. That such first use is generally accompanied by pain and soreness and sometimes by swelling. The use of the leg must be moderate and without heavy lifting.

The evidence justifies the conclusion, that when defendant stopped paying plaintiff compensation on May 12, 1928, it thereby practically compelled him to undertake employment in making ties for the support of himself and his dependent family. It is shown that he has no education, and the evidence indicates that he is not capable of performing any kind of labor, except manual labor. If there was any kind of employment open to him at the time, except making ties, the evidence does not show it. Plaintiff had only partially recovered and the work of making ties aggravated the pain and weakness of his ankle, thereby retarding recovery. Defendant should not have made it necessary for plaintiff to commence such work so soon after his injury. Defendant is therefore not entitled to any credit nor reduction in the matter of payment, on account of labor performed by plaintiff in such a situation. It must pay compensation just as it should have done, and support the condition in plaintiff which it had produced.

The Act 20 of 1914, Section 8 (amended Act 85 of 1926) provides the compensation which must be allowed.

The plaintiff was receiving a weekly wage of $13.50 per week. Defendant has recognized his right to 65 per cent of his weekly wage, that is $8.77½ per week, compensation, as a temporary total disability to do work of any reasonable character, from April 13, 1927, the date of his injury, to May 12, 1928, a period of fifty-six weeks, by paying same, and has therefore discharged its obligation to that extent.

The compensation paid amounts in the aggregate to $495.65. Defendant's liability for further compensation is established. It is in fact established that plaintiff's condition was such that he was unable to do manual work, such as getting out ties, for three or four months following May 12, 1928, and his compensation at the rate of $8.77½ per week should have been continued said length of time.

The lower court found that plaintiff was entitled to compensation for 300 weeks. From April 13, 1927 to May 12, 1928, a period of fifty-six weeks, he was regarded as a total disability to do work of any reasonable nature. Then from May 12, 1928, for a period of 244 weeks, he was regarded as a partial disability. The finding does not take into account the fact that his condition was such that he should be looked on as totally disabled for about four months following May 12, 1928. This fact, however, will be taken into account in fixing compensation under paragraph 15. Plaintiff's period of total disability was succeeded by a permanent partial disability, due to the fact that his left leg was left a little shorter than the other, and the motion and function of his foot permanently limited. In addition to this permanent condition his ankle was weak and arthritis existed in the injury at the time of the trial. This condition will likely improve, but the evidence does not enable us to definitely hold that it will, or will not. Neither can we estimate from the evidence when improvement will commence, nor to what extent it may take place.

We agree with the lower court that there will always be an impairment of the usefulness of plaintiff's leg, and a resulting decrease of earning capacity.

The court held that: "The amount of compensation due is not measured by the provisions of the law as to specific injuries, as for the loss of a foot or leg, but by the general provision relating to loss of earning capacity. The only evidence on that question indicates a loss of about one-half capacity." That was plaintiff's estimate of the amount he had been earning at the time when the condition of his leg was such that he should not have been using it to the extent done. However, we can use the same proportion for the purpose of our decree.

The court, applying to the case subsection (c) of Section 8 of the Act mentioned, fixed plaintiff's additional compensation at the rate of $4.38 for 244 weeks, which amounts in the aggregate to $1067.75. This sum added to the $495.65 previously received makes a total of $1563.40. We do not think this amount can be allowed.

The injury was to plaintiff's ankle, and the law provides that amputation between the knee and the ankle shall be equivalent to the loss of a foot.

The Act 20 of 1914, Section 8 (amended Act 85 of 1926), paragraph 15, provides that:

692

"In all cases involving a permanent partial loss of the use of function of the member mentioned herein above, compensation shall bear such proportion of the amounts named herein for the total loss of the member, as the disability of such member bears to the total loss of the member; provided that in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member."

The law provides: "For the loss of a foot, 65 per centum of wages during 125 weeks." Now 65 per cent of a weekly wage of $13.50 for 125 weeks amounts to $1096.87. The $495.65 subtracted from $1096.87 leaves $601.22. The judgment appealed from allows plaintiff on account of his injury, more than can be done under the law on the subject. He is entitled only to the compensation that can be allowed him for the loss of a foot. For convenience in acting on the judgment appealed from, the further amount allowable will be made payable in installments as fixed in the lower court. The action of the lower court in fixing and taxing the fees of all the physicians as cost, sufficiently meets plaintiff's demand on that subject. As for the hospital fees claimed by plaintiff, defendant has paid them and is therefore acquitted on that account.

Plaintiff's demand in this court, in answer to defendant's appeal, is refused.

For the reasons stated, it is now ordered that the judgment herein appealed from, be and the same is hereby amended, reducing the total compensation allowed in addition to that paid, previous to the institution of this suit from $1067.75 to $601.22. That said $601.22 be paid to the plaintiff Lawrence Soileau by the defendant Hillyer-Deutsch-Edwards, Inc., in weekly installments of $4.38 per week. The first week to commence May 12, 1928,

and continue weekly until the total of $601.22 has been paid in principal. Said installments to each draw legal interest from the time they were due until paid. In all other respects, the judgment appealed from is affirmed and made the judgment of this court. The parties may, acting with the approval of the lower court, agree on a lump sum settlement as the law provides.

The cost of this appeal to be paid by appellee.