No. 3777

Second Circuit

DYKES v. RUDDLE

(June 2, 1930. Opinion and Decree.)
(July 5, 1930. Rehearing Refused.)

Vinson M. Mouser, of Columbia, attorney for plaintiff, appellee.

Thompson & Ferguson, of Leesville, and Wm. H. Mecom, of Columbia, attorneys for defendant, appellant.

ODOM, J. Plaintiff was employed by defendant as a log cutter and, while at work in the woods, was accidentally injured by having his leg broken. He sues for compensation at $13.65 per week for 175 weeks, plus medical expenses.

The defense is that plaintiff was disabled for only 22 weeks, for which he was paid; that he has entirely recovered, and that no further compensation is due him. However, defendant, during the trial, tendered 8 weeks additional compensation, which was refused.

There was judgment for plaintiff, fixing his compensation at $9.04 per week for 175 weeks, with credit for twenty-two payments already made. Defendant appealed.

Plaintiff, while at work on October 19, 1928, had his left leg broken between the ankle and the knee, both bones being severed. The leg was placed in a plaster cast where it remained for about twenty days, after which he went on crutches until the following April. About the latter date a physician certified that he had recovered, whereupon defendant, who had been paying him compensation at $7.64 per week, refused to make further payments. The case was tried on December 13, 1929, a year and two months after the accident.

The testimony is somewhat conflicting as to the condition of plaintiff's leg at the time of the trial. Dr. May, who made an examination a few days before the trial, testified that plaintiff had sustained a compound fracture of both bones of the left leg between the ankle and knee; that both bones were slightly out of alignment, there being some lapping of the ends, the leg being half an inch shorter than the other;

that there was considerable callous formation and a "bulging" which retarded circulation, interfered with the nerves, all of which caused pain. He said further:

"And again the bones not being sutured perfectly, there is crepitation, a grating sound that you get in working the bones. The callous holds them so they can't slip away from each other, but there is some crepitation. You can hear the crepitation. He is likely to fracture it over with an awkward step or any severe strain. * * * ·If he is careful of his step, he can get around all right."

The X-ray plates made by Dr. Masterson show a bad union. The ends of the bones are not properly joined together, end to end; there is a lapping of the ends of the bones which accounts for the shortening of the leg.

Dr. Mecom examined plaintiff in May following the accident in October. He found that plaintiff had a compound fracture of the leg, that there was considerable callous, but a good union, and he considered him able to work when he examined him. Asked if he found any impairment of the use of the leg, he said:

"Well, there might be some slight impairment. If he had been a professional dancer, ball player or an acrobat he had perhaps suffered some disability; but as I understand it, he was a farmer and laborer and it was my opinion that he was able to do that kind of work, as well as he ever was."

Dr. Adams, who treated plaintiff immediately following the accident, testified that in his opinion he had recovered when he was discharged on May 13th. Both he and Dr. Mecom admitted that the ends of the bones were not in proper apposition, that they were out of alignment; but they seemed to think that the amount of callous at the union was sufficient to hold the

fracture in place and saw no reason why the leg should not be as strong as ever. This testimony was purely theoretical. They seem to think that, because there is an accumulation of callous around the fracture, the leg should be as strong as ever. That would be true, no doubt, if there was proper apposition—that is, if the ends of the bones had joined together in proper alignment. But they did not, as the pictures show plainly. The fracture of each bone was not transverse, but oblique. In the process of healing, the ends slipped, leaving a decided offset, and there is a bulging on the side of the leg which the doctors all observed. In time the callous may harden and become strong enough, not only to hold the ends of the bones in place, but from a union so strong that plaintiff will have practically normal use of his leg. But that time has not yet arrived.

Plaintiff was on the date of the trial unable to do manual labor of a reasonable character. He could walk, but could not support his weight long at a time. He could not saw or cut logs; he could plow a round or two, but could not hold out. He is a common laborer, but, as such he cannot earn wages. The district judge said in his written opinion that, for all practical purposes, plaintiff has totally lost the use of a leg. Our reading of the record convinces us that his conclusion is correct. While he can use the leg some, he cannot make a hand; he cannot do a day's work; he cannot earn wages.

Dr. Adams testified that he thought that: "After the callous is well formed that it should not give him any pain under ordinary circumstances."

The trouble is that there is a bad union and the leg is not strong; an operation being probably necessary to remedy the defect. The nerves are affected and the cir-

culation poor. This causes pain. The callous does not seem to have hardened properly. All in all, plaintiff is a cripple and cannot earn wages.

The district judge awarded plaintiff compensation for 175 weeks, which Act No. 85 of 1926 allows for the loss of a leg. We find it necessary to amend the judgment as to the duration of the payments. Plaintiff's leg was injured between the knee and the ankle. The leg was not injured above the knee. Section 8, paragraph (d), subparagraph 14, reads:

"A permanent total loss of the use of a member is equivalent to the amputation of the member."

And subparagraph 13 provides that:

"An amputation between the knee and the ankle shall be equivalent to the loss of a foot."

The compensation for the loss of a foot is "65% of wages during one hundred twenty-five weeks." Under the holding in the case of James v. Spence & Goldstein, 161 La. 1108, 109 So. 917, plaintiff is entitled to compensation as for the loss of the foot.

We think the district judge correctly found that the weekly compensation should be fixed at $9.04.

For the reasons assigned, the judgment appealed from is amended so as to allow compensation during 125 weeks instead of 175 weeks, and, as thus amended, the judgment is affirmed, appellee to pay the cost of appeal, all other costs to be paid by appellant.