No. 3906

**Second Circuit**

---

**SIZEMORE v. KIRKLAND TIMBER CO.**

---

(December 23, 1930. Opinion and Decree.)

---

H. W. Ayres, of Jonesboro, and J. F. Phillips, of Shreveport, attorneys for plaintiff, appellee.

E. L. Walker, of Ruston, and Dhu Thompson, of Monroe, attorneys for defendant, appellant.

ODOM, J. Plaintiff alleges that he was employed as a common laborer by the defendant, and that while at work in the course of his employment he was accidentally injured, and that as a result he is now totally and permanently disabled. He prays for compensation for four hundred weeks under the Compensation Acts.

The defense is: First, that plaintiff was not employed by defendant at the time he was injured; and, second, if it should be held that he was its employee at the time, his injuries were slight, soon healed, and he was discharged by his physician as well at the end of thirty days.

From a judgment awarding plaintiff compensation for four hundred weeks, defendant appealed.

The testimony warrants the holding that plaintiff was an employee of defendant at the time he was injured.

Defendant at the time was engaged in the tie and timber business, buying and selling pilings, cross-ties, telephone poles and the like, and in buying timber to be converted into such commodities. It contends that it was purchasing these ties, pilings, etc., at so much per foot f. o. b. the cars, and that it was the duty of those from whom they were purchased to load them and to pay the expense thereof, and that it did not become the owner of them until they were loaded. Because plaintiff was injured while engaged in loading these ties, etc., on the cars, defendant contends that he was in the employ of those from whom it had purchased them. But the testimony shows that plaintiff had no contractual relations with any of these other par-

ties, but that he was employed and directed to do the work by Frank Kirkland, a member of defendant firm or corporation, who was on the ground, and further that plaintiff was paid his days' wages by defendant. But Frank Kirkland says he was directed by the parties from whom the ties and poles were purchased to employ laborers to do the work, pay them their wages, and charge the amounts to them, and that when he directed plaintiff and others to do the work he was acting as agent only for the vendors. He says further that the work plaintiff was engaged to do continued only until noon and that he was injured about 5 o'clock in the afternoon, so that if it be said that plaintiff was originally employed by defendant, such employment ceased before the injury was sustained. But the testimony shows that plaintiff worked through the entire day and that he was not informed by Kirkland or any one else that he was working for another during the afternoon. The trial judge held that plaintiff was the employee of defendant at the time he was injured, and we sustain that holding.

The fact that plaintiff was accidentally injured is not disputed, the only contention being that his injury was slight and that he soon recovered.

Plaintiff was engaged in loading crossties or poles on to cars along with others and while at work struck his left leg just below the knee against the end of a piece of piling, which caused a slight contusion which Dr. Simonton, who first treated him, thought amounted to but little. He discharged the patient as well at the end of thirty days—hence defendant's contention that he had recovered. But the testimony as a whole shows that he had not recovered at the time of the trial six months later.

While Dr. Simonton testified that he found no injuries except to the outer portion of the leg just below the knee, which soon healed, and that the patient did not complain to him of any injury to the knee joint, yet the testimony of Drs. Boyce, Wright, and Harper is that there was injury to the joint itself consisting of a fracture of the semilunar cartilage of the knee. Dr. Wright made two X-ray pictures, one in December, 1929, and the other in April, 1930. He and Dr. Boyce say that the injury consists of a dislocation of the cartilages of the knee joint and they think the injury is permanent.

After Dr. Simonton had discharged plaintiff, plaintiff went to Dr. Harper of Ruston for further treatment, and Dr. Harper sent him to Dr. Wright in Monroe for examination. Dr. Wright made an X-ray of the knee, reported his findings, and sent plaintiff back to Dr. Harper for treatment. Dr. Harper put his knee in a plaster cast, where it remained for five or six weeks. When this was removed he used rubber bandages, and after that hot applications, to reduce the swelling and remove the inflammation. Dr. Harper testified that when he first began to treat the injury he found the knee swollen, being considerably larger than the other, immobilized to a certain extent, sore, and that it could not be used. He testified that the inflammation extended four or five inches below the knee and two or three inches above it, and that there was but little improvement in plaintiff's condition the last time he saw him, which was a short time before the trial.

Dr. Blume testified that in his opinion plaintiff was a malingerer, but he was rather inconsistent in his testimony. At one time he said he thought plaintiff was deliberately faking, yet he was asked if he thought the knee was normal, and he said:

"Well, not altogether, no sir, it is swollen some."

Dr. White did not think plaintiff was suffering from fracture of the cartilages, but said he found his leg "pided up and down the shin bone," which he said was probably due to what is known as "vasso-motor paralysis, a paralysis through the nerves and the veins, and that is the condition that would cause swelling in a joint of the knee." He was not impressed that plaintiff was under any disability. However, he and Dr. Simonton concede that if there was a rupture of the cartilage of the knee joint as found by Drs. Boyce and Wright, the condition is serious. Dr. Simonton was of the opinion that if there had been such a rupture there would have been intense pain and a locking of the joint, and says further that the lick on the leg would not have caused such a rupture. He further said that such a rupture is caused ordinarily by strain. Plaintiff testified that not only did he strike his knee against the piece of piling, but that he jumped when he saw he was about to be injured and strained or sprained his knee, which, according to Dr. Simonton, would cause the rupture complained of.

The testimony as a whole conclusively shows that plaintiff had not recovered at the time of the trial. He was then going on crutches, and he, as well as Dr. Harper, testified that he could not bear the weight of his body on that leg. Drs. Wright and Boyce testified that this disability is permanent, and the other physicians concede that if there was a rupture of the cartilages of the knee joint the condition is serious. We think that plaintiff has lost the use of his leg in so far as performing manual labor of any kind is concerned. He cannot bear the weight of his body upon it and therefore cannot stand up to work.

However, as the injury is to the leg only he cannot recover compensation for a period exceeding one hundred seventy-five weeks under section 8, subsection (d), paragraphs 8 and 14 of Act No. 242 of 1928, page 356. James v. Spence & Goldstein, 161 La. 1108, 109 So. 917; Hicks v. White-Crandin Lumber Co., 7 La. App. 73; LeBlanc v. Ohio Oil Co., 7 La. App. 721; Joseph v. Higgins Lumber Co., 12 La. App. 600, 126 So. 255.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be so amended as to reduce the period during which compensation shall be paid from four hundred weeks to one hundred seventy-five weeks, and as thus amended it is affirmed, the appellee to pay cost of appeal, all other costs to be paid by appellant.