**FULMER v. McDADE GIN CO., Inc., et al.**

No. 4325.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1932.

Thatcher, Browne, Porteous & Myers, of Shreveport, for appellants.

Foster, Hall, Barret & Smith, of Shreveport, for appellee.

PALMER, J.

Plaintiff brings this suit under Act No. 20 of the General Assembly of the state of Louisiana for the year 1914, and amendments thereto, for compensation alleged to be due for injuries sustained by him in an accident which occurred on or about October 1, 1929, while making repairs on the cotton gin of the defendant company.

He alleges that, at the time of his injury, he was working for the defendant company in repairing its cotton gin, at a monthly salary of $225, and was injured while engaged in work in the course of his employment. He alleges that the accident occurred in the following manner: That he was engaged in cleaning the dirt and gum from an air nozzle, which composed a part of the gin machinery; that the machinery was stationary, but, while he was engaged in that work, other employees of the defendant company, without warning to him, turned by hand the main line shaft of the gin, thereby causing the gin saw to revolve, catching his index finger on his right hand in the gin saw; that he then called to the other employees of the defendant company, requesting that they reverse or back up the line shaft, in order that he could release his finger, but, in the excitement they revolved the line shaft in a forward direction, causing his right hand to be drawn further into the saws and thereby injuring his said hand; that his injuries thus received were as follows:

The blade of the saw entered the hand and cut through the knuckles of the first and second fingers, severing the muscles of the hand at that point; that the bones of the second finger were split open almost to the hand; that the hand was cut and split open by the gin saws between the knuckles of the second and third fingers, severing the muscles in that region of the hand; that the bones of the third fingers were split to the knuckles of the hand; that the hand was cut and split open between the knuckles of the third and fourth fingers, severing the muscles of that region of the hand; that the hand between the third and fourth fingers was split open between the

knuckles of those fingers; and that the fourth finger was split on the outer side of the first phalanx and was split on the outer side of the third phalanx and of the knuckle of the fourth finger.

Plaintiff further alleges that thereafter he underwent an operation, made necessary by said injuries, in which his second finger of his right hand was amputated just above the knuckle, and that the third finger of the same hand was amputated at the second phalanx. He further alleges that, as a result of these injuries, his right hand is permanently, partially paralyzed, and that he no longer has sufficient strength in it to properly grasp or use the tools or implements necessary to carry on his trade as a gin repairer; that the ligaments and muscles of his hand are weakened and the knuckles permanently distorted; that a loose section of bone remains at the base of the second finger; and that the remaining portion of his third finger is stiff and incapable of self-movement or muscular control.

Plaintiff further alleges that, as a direct result of his said injuries, he has suffered a permanent, partial loss of the use of function of the right hand to the extent of 66⅔ per cent. of its usefulness.

Plaintiff alleges that the Travelers' Insurance Company insured the McDade Gin Company, Inc., against accident to its employees, under the employers' liability laws of the state of Louisiana, and made the said insurance company a party defendant in this suit. He seeks judgment in solido against both defendants.

In the alternative, plaintiff pleads that, if it should be held that he is not entitled to compensation on account of the permanent, partial loss of use of function of the hand, then, as a direct result of the injuries described, he is partially and permanently disabled to do work of any reasonable character; and that, by reason of his injuries, he is unable to earn more than $17.50 per week. Further in the alternative, he alleged that he is entitled to compensation at the rate of $20 per week for the period of his disability, not to exceed 300 weeks, less the weeks for which he has already been paid.

For answer, defendants admitted the employment and the salary, as alleged, and averred that the extent of plaintiff's injury was the loss of two terminal phalanges, and half of the proximal phalanx of the second, or middle, finger; and the loss of the terminal phalanx and one-half of the middle phalanx of the third or ring finger of his right hand, that is, that plaintiff lost two and one-half phalanges of his middle finger and one and one-half phalanges of the third or ring finger, and that such injuries are specially covered and provided for under subsection 1 (d) of section 8 of the Workmen's Compensation Act (Act No. 242 of 1928, p. 357).

Defendants denied that plaintiff was entitled to recover under either of his alternative pleas. They further alleged that they have already paid plaintiff $600, which amounted to compensation at $20 per week, for 30 weeks, and that said payments constituted the full amount due plaintiff for his said injuries.

On these issues, the case went to trial, resulting in a judgment for plaintiff in the sum of $20 per week, for a period of 75 weeks, from October 1, 1929, with 5 per cent. per annum interest on each weekly payment from due date until paid, less a credit of 30 weeks, at $20 a week, already paid, or a total credit of $600. From that judgment defendants have appealed.

### Opinion.

As is seen, plaintiff in his main demand is seeking to recover $20 per week for a period of 150 weeks, subject to a credit of payments for 30 weeks, for a permanent partial loss of the use of function of his right hand, estimated at 66⅔ per cent., while, on the other hand, defendants claim that his compensation should be confined to that specified under subsection 1 (d) of section 8 of the Workmen's Compensation Act, covering loss of fingers or parts of fingers, which they claim to have fully paid.

Defendants' claim is good or not, according to whether or not plaintiff's injuries stopped at the loss of parts of fingers only. In a written opinion, among other things, the trial court stated: "At the time of the trial of the case, I made a close inspection of plaintiff's right hand in comparison with the left hand, and I am of the opinion that the hand is injured other than the loss of the second and third fingers. The first finger was still stiff and he did not have good use of it."

Continuing, the trial court further said: "I think he was suffered an injury to his hand beyond the loss of a finger and a half, and in my opinion, fifty per cent is a fair estimate."

Paragraph 5 of section 8, subsection 1 (d), reads: "For the loss of a hand, sixty-five per centum of wages during one hundred and fifty weeks."

Paragraph 15 of section 8, subsection 1 (d), provides: "In all cases involving a permanent partial loss of the use or function of the member mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such member as the disability to such member bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member."

The question, therefore, to be decided is whether or not plaintiff's right hand, as a result of the accident in question, is injured, in

addition to the injuries to the fingers, and, if so, to what extent? Has he sustained a permanent partial loss of the use of function of his right hand, and, if so, to what extent?

The medical testimony introduced at the trial shows that the hand begins at the web where the fingers joint the hand. There is no controversy over this particular point. As will be observed, the district judge, who took hold of plaintiff's hand and gave it first-hand inspection, was of the opinion that the hand was injured beyond the loss of a finger and a half finger.

Plaintiff gave the following testimony, concerning his hand injury:

"A. I hollered and asked them to back up the other way.

"Q. What did they do? A. It seem's they started and it went forward and pulled the other part of my hand in. * * *

"Q. What about the first finger? A. The first finger was injured.

"Q. In what way? A. It was cut between the first and second knuckle there. * * *

"Q. Did the saw enter the hand at that point at all (meaning the second and third fingers)? A. It entered the side of the third finger and went in up to the knuckle. * * *

"Q. What about the balance of the hand; was there any injury between the third and little finger? A. The saw cut through the knuckle of the third and fourth up to the knuckle. * * *

"Q. Did they stitch the hand itself or just the fingers? A. The hand and the fingers.

"Q. The body of the hand itself? A. Yes, sir, it had to be stitched, all cut on the knuckles and on top of the hand. * * *

"Q. You say this accident occurred that the saws teeth went in what is called the metacarpal portion of the hand and going up into the knuckle or beyond the knuckle? A. Here they are, you can tell, you notice here that one of these knckles is large and stiff now.

"Q. Up into the knuckle? A. Yes, sir.

"Q. You do not say that the saw went beyond the knuckle? A. I cannot tell about that; but it went far enough in that knuckle to damage it."

On the same question, Dr. A. Jerome Thomas, of Shreveport, who specializes in X-ray diagnosis and treatment, and who made the X-ray photograph of plaintiff's injured hand, gave the following testimony on this point:

"Q. Describe the location of any (scars) that you find, Doctor? A. The major scar is opposite what is commonly known as the knuckle joint. * * * Yes, there is one upon the finger here, a big scar upon the ring finger. The others are upon the hand.

"Q. Well, are they upon the hand rather than the fingers, no matter whether you consider that the hand ends at the knuckles or at the web of flesh between the fingers? A. I would consider them on the hand. * * *

"Q. They are all upon the hand? A. They are all upon the hand, with the exception of the one upon the ring finger. * * * There is a foreign body, a piece of steel, but it is not in the joint, it is close to it. It is impossible for me to say—whether it is outside of the joint.

"Q. Well, is it in the hand or finger? A. It is in the hand."

On this same question, Dr. W. M. Scott, of Shreveport, who operated on plaintiff's hand after the injury gave the following testimony:

"Q. Would you look at them and state as a matter of fact whether they are enlarged? A. Yes, sir, the second one is, but that could have been from some other cause.

"Q. Also could have been from the accident? A. Yes, sir. * * *

"Q. Doctor, if that enlargement took place after the accident, immediately after the accident, the accident occurring on October 2, 1929, would you state whether or not in your view that the enlargement will be permanent? A. Yes, the enlargement will be permanent whether due to the accident or not, I cannot say. * * *

"Q. Doctor, you stated that the second knuckle was enlarged? A. Yes, sir."

From this testimony, it is evident that plaintiff's injuries extend beyond his fingers into his hand proper. He is unable to grasp a hammer handle or a screw driver in the performance of his regular work, and these are tools he must use in pursuit of his line of work. According to plaintiff's testimony, it now takes him three times as long to do his work as it did prior to his injuries.

The trial court evidently weighed the testimony in the light of his own personal examination of plaintiff's hand. He believes that plaintiff has suffered a permanent partial loss of the use of function of his right hand to the extent of 50 per cent. We are not prepared to hold that the testimony does not fully justify these conclusions.

In determining the amount of compensation due plaintiff, the trial judge allowed compensation for 75 weeks, at $20 per week, when, in our opinion, the proper method of arriving at the same result is to allow $10 per week, for a total of 150 weeks. If the injury consisted of the loss of the whole hand, the compensation would be $20 per week for 150 weeks, so, if the loss is only 50 per cent., then the compensation is one-half of $20 per week, for 150 weeks; however, the net results of both methods are the same.

It is claimed by defendants that in all events the judgment should be credited with the sum paid plaintiff by the McDade Gin

Company, Inc., for the work he performed, after his recovery was sufficient to resume labor. The fallacy of that contention is patent on its face. The very reason for not allowing plaintiff full compensation for a hand is because it sustained only a permanent partial loss, fixed at 50 per cent. Where the impairment is only partial, it is assumed that the employee has some earning capacity left, so, whenever he is able to resume his labor, whatever is thereafter paid him for such labor is not properly deductible from the amount of compensation due him for the permanent partial loss of the use of function of the injured member.

If the amount due plaintiff for work performed for defendant, McDade Gin Company, Inc., after he recovered sufficiently to resume labor, should be credited on the compensation to which he is entitled in this case, then, whatever he may have received from others for labor performed since resuming work after receiving his injuries, should also be credited on the compensation due him on account of his said injuries. If that is a correct meaning of the law, then clearly defendants could have abided their time until plaintiff, after resuming his labor, earned enough to offset the compensation due him on account of his injuries, notwithstanding he has an injured hand with a permanent partial loss of the use of its function, amounting to 50 per cent. The district judge correctly rejected that claim.

The judgment of the lower court is amended by allowing plaintiff compensation for a period of 150 weeks, at $10 per week, from October 1, 1929, with 5 per cent. per annum interest on each weekly payment from the date due until paid, less a credit of 60 weeks at $10 per week, or $600, already paid; defendant appellant to pay all costs of both courts.