## WILSON v. UNION INDEMNITY CO. et al.*
### No. 14485.

Court of Appeal of Louisiana. Orleans.
Oct. 16, 1933.

Bond, Curtis, Hall & Foster, of New Orleans, for appellants.

Wisdom & Sokolsky and John Minor Wisdom, all of New Orleans, for appellee.

HIGGINS, Judge.

Plaintiff seeks to recover from the defendants in solido, compensation for a period of 400 weeks for permanent total disability.

Defendants admit that plaintiff was injured and received compensation for a period of 47 weeks, but aver that his disability ceased at that time, and in the alternative that plaintiff's right to be paid compensation is limited to 175 weeks under the express terms of the Employers' Liability Act.

There was judgment in favor of the plaintiff, as prayed for, and the defendants have appealed.

Plaintiff, an ignorant negro, was employed as a laborer by defendants, and on December 1, 1930, fell from a loaded truck to the ground, about 15 feet, and sustained an injury to his right knee. He was treated by Dr. Fred S. Herrin at St. Rose, La., and on January 21, 1931, was sent to New Orleans to Dr. Jos. C. Menendez for treatment. On the same day Dr. Menendez had Dr. Eleazar Bowie to make an X-ray picture of the injured knee, and then applied a plaster of paris cast thereto in order to immobilize it. A month later the cast was removed and baking treatments were administered. Dr. Menendez discharged the patient on May 1, 1931, as able to return to work on May 4, 1931; compensation for this period of 22 weeks having been paid to plaintiff. He attempted to work, and experienced severe pain and weakness in his knee, and on May 30, 1931, went to the Charity Hospital at New Orleans, where X-ray pictures were made and treatment administered for a while.

In the early part of June, 1931, plaintiff engaged present counsel, and, as a result of corresponding with the defendants, plaintiff, on June 12, 1931, reported to Dr. Menendez for another examination. Dr. Menendez called in consultation Dr. H. Theodore Simon and Dr. Edward S. Hatch. Another X-ray picture was made by Dr. Bowie on July 24, 1931, and, aided by the skiagraph, Drs. Simon and Hatch examined the plaintiff. They found that the patient was still disabled, and suggested that the physio-therapy treatment be given. Dr. Menendez carried out these instructions, and plaintiff was treated for an additional period of 25 weeks, during which time he received weekly compensation. He was finally discharged by Dr. Menendez on October 26, 1931, after a consultation with Dr. Hatch.

Plaintiff again attempted to work, but complained of the same trouble, and on February 11, 1932, reported to the orthopedic clinic of the Charity Hospital, where he received baking and serum treatments until August, 1932.

Suit was filed on March 14, 1932, and Dr. Menendez examined plaintiff, and had Dr. Bowie make another X-ray picture during June, 1932.

Plaintiff and his wife testified that he was forty-one years old, and before the accident weighed about 175 pounds, but thereafter only 145 pounds; that he had always been in good health prior to the injury to his knee, and worked at hard, laborious jobs regularly; that, after the accident, he was home in bed for 53 days with a sandbag alongside of his leg, except when being taken in an auto to Dr. Herrin's office.

Dr. Herrin, a witness for defendants, states that plaintiff was confined to his bed for 11 days and was treated at his office twenty-four times thereafter, during the 53-day period, going there on crutches, and that he had the sandbag applied to the injured leg.

Dr. Erasmus D. Fenner, an orthopedic surgeon, who treated the plaintiff at the Charity Hospital for several months, with the aid of the history of the case, the X-ray pictures, and readings thereof by Dr. Amedee Granger, also of the Charity Hospital, diagnosed the plaintiff's case as traumatic arthritis, and an internal derangement of the knee due to an injury of the cartilages in the joint. It was

310

his opinion that the torn and dislodged cartilages were being pinched between the bones in the kneejoint, when the plaintiff attempted to walk and stand on his right leg; that plaintiff would probably get well if the knee was opened and the loose and injured cartilages anchored in their proper places (to which surgical treatment plaintiff agreed to submit); and that the plaintiff was "unquestionably disabled and unfit to perform manual labor."

Dr. Octave C. Cassegrain, a practicing physician and medical instructor at Tulane University, who also treated plaintiff at the clinic of the Charity Hospital for some time, states that he diagnosed the case as "chronic traumatic arthritis of the inside of the joint," that a person in this condition could do manual work only with the greatest fortitude and severest pain, and that plaintiff is totally disabled.

Drs. H. Theodore Simon and Dr. Edward S. Hatch, joint and bone surgeons, and Dr. Jos. C. Menendez, state that in their opinion the plaintiff has recovered from the effect of the trauma, except a 15 per cent. functional disability due to "excess lateral mobility" in the kneejoint, and that this condition is permanent, as the ligaments were torn loose; that this functional disability does not prevent plaintiff from doing laborious work; that they also found plaintiff to be suffering from hypertrophic arthritis, a slow progressive disease caused by some foci of infection or some endocrine disturbance, and that plaintiff is a malingerer.

The knee of the plaintiff was exposed and examined by the doctors in the courtroom. The trial judge took issue with the doctors who said that plaintiff was pretending to be in pain, and dictated into the record a statement that, in his opinion, the plaintiff was not feigning, but was actually suffering.

The X-ray picture originally made by Dr. Bowie showed that the plaintiff sustained a small chip fracture of the external condyle of the right femur and a small chip fracture of the head of the right tibia and of the right fibula. This report, as well as the long period of time which the defendants' doctors kept plaintiff under their care, show that he sustained a very bad injury to his knee.

All of the doctors agree that a severe traumatic injury to a joint that has a dormant hypertrophic condition will aggravate, accelerate, and make the dormant situation become acute, and that in such cases it is very difficult to tell when the patient has fully recovered from the effects of the trauma and is only suffering from hypertrophy; i. e., overproduction of bone and calcification of the soft parts of the ligaments surrounding the joint.

■ After a careful review of the record, we are of the opinion that the evidence amply supports the conclusion of the trial judge that the plaintiff, as a result of the accident, is permanently and totally disabled to do work of any reasonable character. Chapman v. Louisiana Central Lumber Co., 3 La. App. 489; Allen v. Geo. E. Breece Lumber Co., 19 La. App. 127, 139 So. 73; Ross v. Cochran & Franklin Co., 10 La. App. 719, 122 So. 141; Carroll v. International Paper Co., 14 La. App. 533, 122 So. 131; Dykes v. Ruddle, 14 La. App. 106, 128 So. 686.

The second issue presents strictly a question of law.

■ The plaintiff contends that, where capacity to work is affected, the nature of the injury is immaterial and compensation is due under subsections (a), (b), or (c) of section 8 of the Workmen's Compensation Act (Act No. 20 of 1914, as amended by Act No. 85 of 1926 and Act No. 242 of 1928); so that, for an injury to a knee resulting in permanent total disability to do work of any reasonable character, an employee is entitled to be awarded compensation not exceeding 400 weeks.

Defendants argue that in no event can the total compensation to be paid exceed 175 weeks under the express terms of paragraphs 8, 14, and 15 of subsection (d) of section 8 of Act No. 20 of 1914, as amended by Act No. 85 of 1926 and Act No. 242 of 1928, because those paragraphs provide that compensation for the loss of a leg shall be 65 per cent. of the wages for 175 weeks, and "in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member."

A reading of the decisions on the subject shows that there has been confusion and conflict in the jurisprudence of this state. The compensation statute was enacted in 1914 (Act No. 20 of 1914). From then until the passage of Act No. 43 of 1922, adding subparagraph 14 to subsection (d), the law was clear that an injury to a member, producing disability, was compensable under subsections (a), (b), or (c) of section 8. Paragraph 14 was added to fill a void in the law, for before this amendment an employee who had lost the entire use of a member, not severed or amputated, had no remedy if he suffered no incapacity to earn wages. However, if disability to work resulted, he was compensated therefor. Norwood v. Lake Bisteneau Oil Co., 145 La. 823, 83 So. 25; Rodriguez v. Standard Oil Co., 166 La. 336, 117 So. 269.

Even after the passage of Act No. 43 of 1922, up until 1926, when James v. Spence & Goldstein, 161 La. 1109, 109 So. 917, was decided, subsection (d) was held to be inapplicable in a disability case. Garr v. Wyatt Lumber Co., 147 La. 689, 85 So. 640; Dennis v. Huber, 151 La. 589, 92 So. 126; Daniels v. Shreveport Producing & Refining Corp., 151 La. 800, 92 So. 341.

The Courts of Appeal, in line with the above cases, consistently held that subsection (d) had no application to an injury affecting earning power. Butler v. Maryland Casualty Co., 1 La. App. 616, Bryant.v. Texas Pipe Line Co., 1 La. App. 42, Wilkinson v. Dubach Mill Co., Inc., 2 La. App. 249, O'Donnell v. Fortuna Oil Co., 2 La. App. 462, Davis v. Gillis, 2 La. App. 567, Franklin v. Ernest Roger Co., 2 La. App. 764, and Chandler v. Oil Fields Gas Co., 2 La. App. 778.

In James v. Spence & Goldstein, 161 La. 1109, 109 So. 917, 920, the plaintiff, a carpenter, as a result of an injury, suffered paralysis of the fingers of his right hand. The district court allowed compensation for partial disability under subsection (c), which sum was in excess of the compensation recoverable for the loss of a hand. The Court of Appeal affirmed the lower court. The Supreme Court reversed these judgments, and held that, regardless of the classification of the injury under the schedule to which it properly belonged, the amount of compensation was limited by the language in subsection (d), which provides that "in no case shall the amount received for more than one finger, exceed the amount provided in this schedule for the loss of a hand."

The Courts of Appeal, basing their view upon this decision, applied the limitation of subsection (d) to cases where the disability resulted from an injury to a member of the body, on the theory "that the greater includes the lesser." Joseph v. Higgins Lumber Co., 12 La. App. 600, 126 So. 255; Wolf v. Louisiana Milk Products Co., 8 La. App. 657; Synder v. Kolb, 11 La. App. 414, 123 So. 454; Soileau v. Hillyer-Deutsch-Edwards, 10 La. App. 688, 122 So. 157; Cater v. Magnolia Pipe Line Co., 6 La. App. 499; Hunter v. Louisiana Ice & Utilities Co., 6 La. App. 849; Hicks v. White Crandin Lumber Co., 7 La. App. 73; Dykes v. Ruddle, 14 La. App. 106, 128 So. 686; Sizemore v. Kirkland Timber Co., 15 La. App. 229, 131 So. 501; Maremore v. Caddo-Desoto Cotton Oil Co., 7 La. App. 734; Ham v. Domill Construction Co., 8 La. App. 797; Hammons v. Southern Int'l Paper Co., 10 La. App. 144, 122 So. 74; Ross v. Cochran & Franklin Co., 10 La. App. 719, 122 So. 141; Smith v. Simplex Oil Co., 12 La. App. 338, 124 So. 584; Lee v. Southern Surety Co., 16 La. App. 266, 133 So. 799; Allen v. Geo. E. Breece Lumber Co., 19 La. App. 127, 139 So. 73; Lee v. Mark H. Brown Lumber Co., 15 La. App. 294, 131 So. 697; Davis v. Hawthorne, 16 La. App. 172, 133 So. 532; Hammonds v. McClendon, 18 La. App. 430, 138 So. 173; Fulmer v. McDade Gin Co. (La. App.) 142 So. 733; Giroir v. Celotex Co., 10 La. App. 141, 119 So. 777.

The next important development took place when the Supreme Court considered the case of Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9, 11. There the plaintiff, a tele-phone lineman, fell from a pole and sustained an injury to the muscle controlling his right eye, causing him to see double when both eyes were open. The left eye was perfect, and, as long as he kept his right eye closed, his vision was as good as any one-eyed person's. The Court of Appeal (19 La. App. 275, 135 So. 388, 391) held that the injury was compensable under section 8, subsection (d), paragraph 16, providing for cases "not falling within any of the provisions already made," and allowed him the maximum of 100 weeks under that paragraph. On a writ of certiorari the Supreme Court reversed the judgment and said:

"The Court of Appeal was in error in fixing plaintiff's compensation under this paragraph. The injury suffered by plaintiff is an injury affecting his capacity to work. Wherever such is the case compensation therefor is not governed by subsection (d), par. 16, of section 8 of the act of 1928, but by those provisions of the act, relating to compensation for injuries producing disability to work, such, for instance, as subsections (a), (b), and (c) of section 8. This is made clear by the ruling in Black v. Louisiana Cent. Lumber Co., 161 La. 889, 109 So. 538, 540. * * *

"We adhere to the ruling in the Black Case, and consider it decisive of the inapplicability of subsection (d), par. 16, to this case. Such being our appreciation of the jurisprudence of this state, it follows that the right to compensation for the injury in this case is controlled by subsection (a) of section 8 of the act of 1928, relative to temporary total disability to do work of any reasonable character, or by subsection (b) thereof, relative to permanent total disability to do work of such character, or subsection (c), relative to partial disability to do work of that character. We feel that the case is not governed by subsection (d), par. 9, relative to the loss of an eye, even when aided by paragraph 14 of that subsection, for, though an eye may be considered a 'member' as well as an 'organ,' under the terminology of the act, nevertheless plaintiff has not lost an eye nor the total use of one."

Now it appears to us that this decision is in accord with the early cases before James v. Spence & Goldstein, supra, and contrary to those that followed it. It may well be that Courts of Appeal in their opinions, in the cases above cited, extended the principle of James v. Spence & Goldstein beyond the limits contemplated by the Supreme Court, because the court apparently did not consider its ruling a departure from the prior jurisprudence. It is significant that neither in the majority opinion nor the concurring opinion does the court mention a single case of the many in which the contrary rule had been announced and accepted. (The ratio decidendi of the case is that, where there is partial disability on account of an injury to the fingers, the ex-

press language of the statute limits the compensation to an amount not to exceed that due for the loss of a hand.)

If the matter were res novo, an interpretation of the statute as amended leads inexorably to the conclusion that, if capacity to do work of a reasonable character is affected, the fact that the injury is to a member of the body is unimportant, and compensation is due under subsections (a), (b), or (c); and, on the other hand, if capacity to work is unaffected, the employee may still recover a certain amount under the schedules in subsection (d) if the injury has caused a severance or amputation of a member or the loss or impairment of the use of function of a specified member of the body.

It appears to us that the fallacy in the defendants' position is that they contend that paragraphs 14 and 15 of subsection (d) modifies the entire Compensation Act. If it were the intention of the Legislature to modify and limit subsections (a), (b), and (c) by subsection (d), appropriate language would ·have been employed to do so. Instead, it deliberately omits the word "disability" in subsection (d), and carefully repeats, in each of the three prior subsections (a), (b) and (c), the clause "disability to do work of any reasonable character."

It will be noted that subparagraph 14 does not state that total disability caused by an injury to a member shall be equivalent to amputation thereof, but that loss of use of a member shall be the equivalent.

It has been held many times that subsections (a), (b), and (c) cover all cases of injuries affecting earnings, while subsection (d) has been applied regardless of earnings. Boyer v. Crescent Paper Box Factory, 143 La. 368, 78 So. 596; Butler v. Maryland Casualty Co., 1 La. App. 616; Boanno v. Cooper, 18 La. App. 230, 138 So. 174; Stensbury v. Texas Co., 1 La. App. 716; Smith v. Simplex Oil Co., 12 La. App. 338, 124 So. 584; Hammonds v. McClendon, 18 La. App. 430, 138 So. 173. In short, subsection (d) is not strictly compensatory, but is in the nature of a tort remedy for a personal injury not affecting earning capacity or ability to work. Schneider's Workmen's Compensation Law (2d Ed. 1932) § 398.

Since the case of Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9, was decided, there have been two opinions by the Courts of Appeal in the cases of Fulmer v. McDade Gin Co., 142 So. 733, and Whitley v. Hillyer-Deutsch-Edwards, 142 So. 798, 799. In the former the plaintiff injured his fingers and hand in a gin saw. He was unable to grasp a hammer or screwdriver in the performance of his regular work. The court decided that recovery was limited to a proportion of the maximum for the loss of a hand. In the latter, the plaintiff cut his knee with an axe. The district court awarded compensation not to exceed 300 weeks on a 50 per cent. disability. In affirming the decision, the Court of Appeal said: "It is also urged on behalf of plaintiff that his injury involves the permanent total loss of the use of a member, which, under the compensation statute, is equivalent to its amputation, and therefore his recovery should be as for the loss of a leg for which he is entitled to 65 per cent. of his wages for a period of 175 weeks. As we understand the testimony on this point, however, plaintiff has not lost the total use of his leg, but his injury has resulted in a serious partial disability on his part, as a whole, to do work of any reasonable character. The district judge fixed the degree of disability at 50 per cent., which we think is justified by the medical testimony in the case, and awarded compensation on that basis for a period of 300 weeks, which was correct."

Upon the authority of Knispel v. Gulf States Utilities Co., and Whitley v. Hillyer-Deutsch-Edwards, supra, which we find to be in accord with the early decisions on the subject and in keeping with a fair and reasonable interpretation of the statute, we have decided to affirm the judgment of the trial court.

For the reasons assigned, the judgment appealed from is affirmed, defendants to pay all costs of court.

Affirmed.